[No. B099159. Second Dist., Div. Six. Oct. 31, 1996.]

MARIA G. GOMEZ et al., Plaintiffs and Appellants, v.
JAMES ACQUISTAPACE et al., Defendants and Respondents.

## COUNSEL

Bennett, Johnson & Galler, Robert B. Galler, Esteban L. Valenzuela and Marc Sherman for Plaintiffs and Appellants.

Weldon & DeGasparis and Richard P. Weldon for Defendants and Respondents.

## OPINION

**YEGAN, J.**—Jose Luis Gomez choked to death at work when his clothing became tangled in a powered posthole digger. A few days later his employer destroyed the posthole digger. Maria G. Gomez (Gomez), Jose's widow, sued the employer for negligent and intentional spoliation of evidence, alleging that destruction of the posthole digger prevented her from recovering damages in a third party action against its manufacturer. She appeals from the trial court's order granting the employer's motion for summary judgment.

The trial court ruled the negligent spoliation cause of action was barred by the exclusive remedy provisions of workers' compensation law. (Lab. Code, §§ 3600 and 3602.)[1] As to the intentional spoliation cause of action, the trial court ruled that it was barred because Gomez failed to show that the

---

[1]All statutory references are to the Labor Code unless otherwise stated.

employer acted with the intent to prejudice her chances of prevailing in the third party action. Both rulings were erroneous and we reverse.

### Facts and Proceedings

After Jose Gomez's death, investigators from the Santa Barbara County Sheriff's Department and the Occupational Safety and Health Administration (OSHA) inspected and photographed both the posthole digger and the tractor on which it was mounted. A few days later, Jose's employer, James Acquistapace, asked the OSHA inspector whether he could destroy the posthole digger. When the inspector voiced no objection, Acquistapace instructed one of his employees to cut up and dispose of the item. The employee did so.

Gomez sued Acquistapace, the manufacturer of the posthole digger, and the manufacturer of the tractor on which it was mounted on theories of negligence and products liability. Gomez stipulated to a judgment in favor of the manufacturers because, she argues, loss of the posthole digger prevented her from obtaining the evidence necessary to prevail.

Acquistapace moved for summary judgment on the ground that workers' compensation provided the exclusive remedy for each claim alleged against him. He also argued that Gomez was not prejudiced by the loss of the posthole digger. Acquistapace's moving papers did not raise an issue concerning his intent in destroying the equipment. Nevertheless, he submitted a declaration stating that he "had the post hole digger destroyed as it gave me bad memories. . . . I did not destroy [it] to hide or conceal anything about it. . . . [¶] Another reason for getting rid of the post hole digger was so no one else would make a mistake like Mr. Gomez and use [it] without the guard on the power take off shaft or get off the tractor when the power take off was operating and rotating." Acquistapace referred to the declaration only in connection with his argument that Gomez was not prejudiced by the destruction of the posthole digger.

Gomez's opposition argued that workers' compensation was not the exclusive remedy for intentional or negligent spoliation because the spoliation occurred after Jose Gomez's employment ended. Although Gomez failed to contradict Acquistapace's declaration, she argued that the intent issue should not be decided on summary judgment (Code Civ. Proc., § 437c, subd. (e)), and that the declaration did not resolve the question whether Acquistapace negligently destroyed evidence.

After the opposition was filed, and two days before the hearing, Acquistapace filed a "Supplemental Statement of Undisputed Material Facts,"

identifying four additional facts in support of the motion. These included the facts that, "James Acquistapace did not destroy the post hole digger to hide or conceal anything about it[,]" and that he destroyed it "because he did not want other employees to use it and it gave him bad memories . . . ." The document was not accompanied by additional legal argument. Gomez did not respond to it before the hearing.

## The Notice Problem

Gomez contends that the trial court erred because it based its ruling on an issue not timely raised by Acquistapace. She is only partially correct. The trial court has discretion to grant summary judgment on an issue not raised by the moving party, if it notifies the opposing party of its intent to do so and provides an opportunity to respond to the new issue. (*Juge* v. *County of Sacramento* (1993) 12 Cal.App.4th 59, 70-71 [15 Cal.Rptr.2d 598].) Here, the trial court erred, not because it relied on a new issue, but because it did so without notice and without providing Gomez a meaningful opportunity to respond.

## Intentional Spoliation

The trial court acknowledged that Acquistapace acted intentionally when he ordered the posthole digger destroyed. It granted summary judgment, however, because it concluded that Acquistapace's "intent was not to alter the evidence available for any subsequent civil suits." The trial court amplified on its rationale by saying that there was "no evidence to dispute Mr. Acquistapace's declaration that he did not intend to interfere with the preservation of evidence for a civil action and ordered the destruction only after the evidence had been well documented." It also said: "The intentional destruction issue . . . just misses the mark slightly, because, of course, [Acquistapace] did destroy it intentionally. He intentionally cut it up. But the intent was not to alter the evidence available for any subsequent civil suits."

Gomez argues the trial court erred by requiring her to dispute Acquistapace's purpose or motive in destroying the posthole digger. She contends that she is required only to raise an issue of fact concerning his knowledge that loss of the equipment was substantially certain to prejudice her lawsuit. We agree. Since Acquistapace testified that he "was aware that there would be pending litigation," Gomez raised a triable issue of fact on this issue.

Few published California decisions specifically discuss the intent element of a cause of action for intentional spoliation of evidence. *Smith* v. *Superior*

*Court* (1984) 151 Cal.App.3d 491 [198 Cal.Rptr. 829], first recognized the tort and defined it by analogy to the tort of intentional interference with prospective economic advantage. Although *Smith* notes that the latter tort requires "intentional acts on the part of defendant designed to disrupt the [economic] relationship . . . ," it does not further define the intent required for spoliation. (*Id.* at p. 501.)

In *Willard* v. *Caterpillar, Inc.* (1995) 40 Cal.App.4th 892 [48 Cal.Rptr.2d 607], a products liability action, plaintiff was injured in 1990 while attempting to repair a tractor manufactured by defendant in 1955. Defendant had previously destroyed all internal documents concerning the design and testing of the tractor, prompting plaintiff to allege a claim for intentional spoliation. The Court of Appeal said that defendant acted intentionally because one of its former employees testified that documents were destroyed "to make them unavailable to potential plaintiffs." (*Id.* at p. 917.) While this evidence demonstrated a purpose to harm future plaintiffs, the *Willard* court also noted: "Intent is broader than a desire or purpose to bring about physical results. It extends not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what the actor does. [Citations.]" (*Ibid.*) *Willard* nevertheless declined to impose liability for intentional spoliation because it concluded that evidence of defendant's improper purpose was outweighed by evidence that the documents were destroyed, on advice of counsel, nearly 10 years before the accident and at a time when defendant knew of no past, existing, or potential claims to which the documents were relevant. (*Id.* at p. 920.)

The remaining published California decisions focus on negligent spoliation or unrelated issues. (*Williams* v. *State of California* (1983) 34 Cal.3d 18, 27-28 [192 Cal.Rptr. 233, 664 P.2d 137] [negligence claim based upon highway patrolman's failure to preserve evidence]; *Walsh* v. *Caidin* (1991) 232 Cal.App.3d 159, 165 [283 Cal.Rptr. 326] [widow suing husband's physician for malpractice has constitutional right to cremate body before autopsy without liability for intentional spoliation]; *De Vera* v. *Long Beach Pub. Transportation Co.* (1986) 180 Cal.App.3d 782, 795-797 [225 Cal.Rptr. 789] [jury instruction on willful suppression of evidence allowed where common carrier negligently failed to preserve evidence concerning bus accident]; *Velasco* v. *Commercial Bldg. Maintenance Co.* (1985) 169 Cal.App.3d 874, 878-879 [215 Cal.Rptr. 504] [recognizing cause of action for negligent spoliation]; see also *Reid* v. *State Farm Mut. Auto. Ins. Co.* (1985) 173 Cal.App.3d 557 [218 Cal.Rptr. 913] [intentional spoliation claim abandoned; insurer did not breach implied covenant of good faith and fair

dealing by disposing of damaged vehicle after accident investigation and before insurer knew of potential products liability claim].)[2]

As a general rule, California law recognizes that ". . . every person is presumed to intend the natural and probable consequences of his acts." (*Lopez* v. *Surchia* (1952) 112 Cal.App.2d 314, 318 [246 P.2d 111].) Thus, a person who acts willfully may be said to intend " ' "those consequences which (a) represent the very purpose for which an act is done (regardless of the likelihood of occurrence), or (b) are known to be substantially certain to result (regardless of desire)." (Perkins on Criminal Law (2d ed.) ch. 4, § 1, p. 747.)' ([*People* v.] *Lathus* [1973] 35 Cal.App.3d [466,] 469-470 [110 Cal.Rptr. 921].)" (*People* v. *Colantuono* (1994) 7 Cal.4th 206, 219 [26 Cal.Rptr.2d 908, 865 P.2d 704].)

The same definition is applied to many intentional torts. For example, intentional infliction of emotional distress requires proof that the defendant "acted with the intent of causing emotional distress to the plaintiffs or knowledge that the conduct was substantially certain to cause distress . . . ." (*Christensen* v. *Superior Court* (1991) 54 Cal.3d 868, 903 [2 Cal.Rptr.2d 79, 820 P.2d 181].) In libel cases, a publication is said to be "intentional" if made for the purpose of communicating defamatory material or with knowledge that the material is substantially certain to be communicated. (BAJI No. 7.02 (8th ed. 1994) p. 274.)

Intentional interference with prospective economic advantage, however, is not established by proof of the defendant's knowledge. Instead, it requires proof that the defendant engaged in conduct falling outside the realm of legitimate business activity for the express purpose of disrupting plaintiff's economic relationship. (*Della Penna* v. *Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 389, 393 [45 Cal.Rptr.2d 436, 902 P.2d 740]; *Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 827 [122 Cal.Rptr. 745, 537 P.2d 865].) The tort is designed to encourage and protect fair economic competition, a goal that would be subverted by imposing liability where the

---

[2]Cases from other jurisdictions suffer from the same lack of specificity concerning the intent requirement. (See, e.g., *Smith* v. *Howard Johnson Co., Inc.* (1993) 67 Ohio St.3d 28, 29 [615 N.E.2d 1037]; *Viviano* v. *CBS, Inc.* (1991) 251 N.J. Super. 113, 123 [597 A.2d 543]; *Continental Ins. Co.* v. *Herman* (Fla.Dist.Ct.App. 1990) 576 So.2d 313, 316; *Hazen* v. *Municipality of Anchorage* (Alaska 1986) 718 P.2d 456, 463.) *Hirsch* v. *General Motors Corp.* (1993) 266 N.J. Super. 222 [628 A.2d 1108], the only case we have located which addresses the issue, concludes: " '[T]raditional tort principles suggest that courts should require plaintiffs . . . to prove that the defendant intended to produce the harm or knew with substantial certainty that the harm, interference with another's prospective civil suit, would follow.' " (*Id.*, at p. 241 [628 A.2d at p. 1117], quoting Note, *Smith* v. *Superior Court: A New Tort of Intentional Spoliation of Evidence* (1985) 69 Minn. L. Rev. 961, 973.)

defendant is nothing more than an aggressive business person. (*Della Penna* v. *Toyota Motor Sales, U.S.A., Inc., supra,* 11 Cal.4th at p. 393.) The more rigorous intent requirement is therefore imposed to assist courts and juries in distinguishing unlawful interference from privileged competition. (*Ibid.*)

In this regard, at least, the analogy between intentional interference with prospective economic advantage and intentional spoliation breaks down. Intentional spoliation carries a lower risk that privileged conduct will be mistaken for tortious activity. A defendant's innocent dealings in private property may readily be distinguished from unlawful destruction of evidence by focusing on the defendant's knowledge of plaintiff's lawsuit and the object's status as potential evidence. ▉▉▉ Thus, intentional spoliation exists where the defendant knows that: (a) plaintiff has an existing or potential action for damages; and (b) the destroyed or altered object might constitute evidence in that action. (*Willard* v. *Caterpillar, Inc., supra,* 40 Cal.App.4th at pp. 910-911; BAJI No. 7.95 (8th ed. 1994) pp. 395-396.)

Here, the trial court granted summary judgment because it found that Acquistapace "did not intend to interfere with the preservation of evidence for a civil action . . . ." In doing so, it read the intent element too narrowly, requiring proof that Acquistapace destroyed the equipment for the purpose of prejudicing Gomez's potential third party action. The trial court's definition would be tantamount to a criminal law "specific intent" crime, i.e., destruction of evidence with the specific intent to impair a third party tort claim.

Liability is imposed for intentional spoliation to protect the integrity of civil litigation. (*Youst* v. *Longo* (1987) 43 Cal.3d 64, 74 [233 Cal.Rptr. 294, 729 P.2d 728, 85 A.L.R.4th 1025]; *Willard* v. *Caterpillar, Inc., supra,* 40 Cal.App.4th at p. 924.) This goal would be hindered, not served, by imposing the more rigorous definition of intent applicable to intentional interference with prospective economic advantage. Accordingly, we conclude that the general definition of intentional conduct should apply in intentional spoliation cases. Thus, the intent element of intentional spoliation of evidence is satisfied when the defendant destroys an object which might constitute evidence in a lawsuit: (1) with the purpose of harming the lawsuit, or (2) when harm to the lawsuit is substantially certain to follow. (See, e.g., *Christensen* v. *Superior Court, supra,* 54 Cal.3d at p. 903; *Willard* v. *Caterpillar, Inc., supra,* 40 Cal.App.4th at p. 917; *Smith* v. *Superior Court, supra,* 151 Cal.App.3d at p. 501.)

## Negligent Spoliation

■ Relying on *Continental Casualty Co.* v. *Superior Court* (1987) 190 Cal.App.3d 156 [235 Cal.Rptr. 260], the trial court erroneously ruled that Gomez's claim for negligent spoliation was barred by the exclusive remedy rule. (§§ 3600, 3602.) The injury Gomez allegedly suffered when the post-hole digger was destroyed is not an "injury" within the meaning of the workers' compensation scheme. Nor do the other conditions of compensation required for application of the exclusive remedy rule exist. (*Coca-Cola Bottling Co.* v. *Superior Court* (1991) 233 Cal.App.3d 1273, 1284-1286 [285 Cal.Rptr. 183].)

Workers' compensation provides the exclusive remedy "for any injury sustained by [any] employee[] arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur: [¶] (1) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division. [¶] (2) Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment." (§ 3600, subd. (a)(1), (2); see also § 3602, ["[w]here the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is . . . the sole and exclusive remedy of the employee or his or her dependents against the employer . . . ."].)

For purposes of section 3600, the term "injury" means "any injury or disease arising out of the employment . . . ." (§ 3208.) Such an injury may be "specific," because it results from a single incident or exposure, "which causes disability or need for medical treatment . . . ." (§ 3208.1, subd. (a).) Alternatively, the injury may be "cumulative," because it results from repetitive traumatic activities which, over time, cause a disability or need for medical treatment. (§ 3208.1, subd. (b).)

In either event, the workers' compensation system applies only to injuries which cause disability or the need for medical treatment. (*Livitsanos* v. *Superior Court* (1992) 2 Cal.4th 744, 752-753 [7 Cal.Rptr.2d 808, 828 P.2d 1195]; *Coca-Cola Bottling Co.* v. *Superior Court, supra,* 233 Cal.App.3d at p. 1287.) It does not, except under extremely limited circumstances, apply to property damage caused by an industrial injury or death. (See, e.g., §§ 132a, 2802, 3208.)

The exclusive remedy rule applies only where the employee suffers an "industrial injury or death." (*Shoemaker* v. *Myers* (1990) 52 Cal.3d 1, 16

[276 Cal.Rptr. 303, 801 P.2d 1054, 20 A.L.R.5th 1016].) Thus, the injuries which trigger application of the exclusive remedy rule are injuries "to the worker's *person*, as opposed to his *property*." (*Coca-Cola Bottling Co.* v. *Superior Court, supra*, 233 Cal.App.3d at p. 1287, citing Code Civ. Proc., §§ 27, 28, 29; see also *Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 160 [233 Cal.Rptr. 308, 729 P.2d 743] ["when the essence of the wrong is personal physical injury or death, the action is barred by the exclusiveness clause . . . if the usual conditions of coverage are satisfied."].)

When a worker loses the opportunity to prevail in a third party action, such as Gomez's action against the manufacturer and distributor of the posthole digger, he or she suffers an injury to his or her property interests, not to the person. (233 Cal.App.3d at p. 1289; *Augusta* v. *United Service Automobile Assn* (1993) 13 Cal.App.4th 4, 8 [16 Cal.Rptr.2d 400] [spoliation of evidence involves the infringement of a property interest, not a personal injury]; *Howland* v. *Balma* (1983) 143 Cal.App.3d 899, 904 [192 Cal.Rptr. 286] [employee's defamation claim against employer not barred by section 3600 because defamation affects a proprietary interest, not a personal injury].) The exclusive remedy rule does not apply to this property damage because the damage is not an "injury" within the meaning of sections 3208 and 3600. (*Coca-Cola Bottling Co.* v. *Superior Court, supra*, 233 Cal.App.3d at pp. 1288-1289.)

Acquistapace argues that this distinction is irrelevant because the property damage at issue was proximately caused by Jose Gomez's personal injuries. He contends that the exclusive remedy rule is routinely used to bar employee lawsuits for property losses such as lost wages and benefits arising out of compensable physical injuries. (*Usher* v. *American Airlines, Inc.* (1993) 20 Cal.App.4th 1520 [25 Cal.Rptr.2d 335]; *Pickrel* v. *General Telephone Co.* (1988) 205 Cal.App.3d 1058 [252 Cal.Rptr. 878]; *County of Santa Barbara* v. *Workers' Comp. Appeals Bd.* (1980) 109 Cal.App.3d 211 [167 Cal.Rptr. 65].) Each of these cases, however, involved employer discrimination against workers injured in the course and scope of their employment. Each found the employee's action barred by the exclusive remedy rule because section 132a expressly creates a remedy for such discrimination. No similar remedy exists for the injuries alleged by Gomez.

Moreover, other conditions of compensation required to trigger the exclusive remedy rule do not exist. For example, Gomez's cause of action for negligent spoliation accrued, at the earliest, when Acquistapace destroyed the posthole digger. (*Augusta* v. *United Service Automobile Assn., supra*, 13 Cal.App.4th at p. 8.) When that occurred, Jose Gomez was no longer

employed by Acquistapace and, thus, no longer subject to the compensation provisions of the Labor Code. (§ 3600, subd. (a)(1).) Because Jose Gomez was not involved in destroying the posthole digger, he was not "performing service growing out of and incidental to his . . . employment[,]" when the relevant injury—the destruction—occurred. (*Id.*, subd. (a)(2).)

Acquistapace relies on *Continental Casualty Co.* v. *Superior Court* (1987) 190 Cal.App.3d 156 [235 Cal.Rptr. 260] (hereafter, *Continental Casualty*), for the proposition that a negligent spoliation claim is barred by the exclusive remedy rule. *Continental Casualty* involved the negligent failure of a compensation insurance carrier to preserve defective equipment relevant to an injured employee's third party products liability action. The court held that the employee's claim "for spoliation of evidence . . . fall[s] within the ambit of work-related concerns. The bulk of [the employee's] damages are work-related physical injuries; the carrier has not been accused of intentional or outrageous behavior; the processing of the third-party action is a normal part of the handling of the compensation claim; therefore no independent action against the carrier is justified." (*Id.* at p. 162.)

*Continental Casualty* is distinguishable because it involves negligent claims handling by a compensation carrier. As the *Continental Casualty* court itself noted, section 5814 "provides a specific remedy for bad faith handling of the benefits claim." (190 Cal.App.3d at p. 160.) No similar remedy is provided for spoliation of evidence by the employer. Moreover, *Continental Casualty* does not consider whether the loss of a prospective third party action qualifies as an injury under section 3600, nor does it analyze whether the other required conditions of compensation exist. Instead, *Continental Casualty* assumes without analysis that the conditions exist and that the damages recovered in such an action compensate for personal injuries, not property losses. (190 Cal.App.3d at p. 161.)

Finally, *Continental Casualty* relied heavily on the fact that the worker had not accused the carrier of "intentional, outrageous, socially objectionable conduct, but only [of] negligence." (190 Cal.App.3d at p. 161.) Given the Supreme Court's recent opinion in *Fermino* v. *Fedco, Inc.* (1994) 7 Cal.4th 701 [30 Cal.Rptr.2d 18, 872 P.2d 559] (hereafter, *Fermino*), we conclude the emphasis is no longer appropriate.

*Fermino* holds that an employee's suit against her employer for false imprisonment is not barred by the exclusivity rule because the employer conduct alleged "is always outside the scope of the compensation bargain." (7 Cal.4th at p. 723.) False imprisonment's status as an intentional tort did not, standing alone, determine this result. Instead, the court noted, "normal

employer actions causing injury would not fall outside the scope of the exclusivity rule merely by attributing to the employer a sinister intention. [Citation.] Conversely . . . , actions by employers that have no proper place in the employment relationship may not be made into a 'normal' part of the employment relationship merely by means of artful terminology . . . . [¶] What matters, then, is not the label that might be affixed to the employer conduct, but whether the conduct itself, concretely, is of the kind that is within the compensation bargain." (*Id.* at pp. 717-718.)

Employer conduct is considered outside the scope of the workers' compensation scheme when the employer steps outside of its proper role, or engages in conduct unrelated to the employment relationship, that is not a normal incident of employment, or that violates a fundamental public policy. (*Fermino, supra,* 7 Cal.4th at pp. 708, 714-715; *Gantt* v. *Sentry Insurance* (1992) 1 Cal.4th 1083, 1100 [4 Cal.Rptr.2d 874, 824 P.2d 680].) Gomez argues that spoliation is not a normal incident of employment because the average worker has no reason to expect his employer will destroy equipment or other evidence of the cause of an industrial injury. Acquistapace argues that he engaged in normal workplace conduct because the average employer will destroy dangerous equipment to protect employee safety.

We conclude Gomez has the stronger argument. First, as judicial recognition of the spoliation tort demonstrates, California has a fundamental public policy to protect the integrity of civil litigation by encouraging the preservation and disclosure of evidence. (*Youst* v. *Longo, supra,* 43 Cal.3d 64, 74; Code Civ. Proc., §§ 1985-2036.) Second, while occasional injuries from defective work equipment may be an expected incident of employment, workers should not be expected to anticipate the almost immediate destruction of such equipment after an industrial accident. Indeed, the average worker would reasonably anticipate the opposite, by assuming the employer will preserve defective equipment, if for no other reason than to protect the employers' own potential claims against manufacturers, distributors and retailers of the equipment.

Finally, we note that allowing an employee's civil action under these circumstances should not undermine the equally important public policy favoring the exclusivity of workers' compensation as a remedy for industrial injuries. (*Johns-Manville Products Corp.* v. *Superior Court* (1980) 27 Cal.3d 465, 478 [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R.4th 758].) We cannot assume that most employers routinely destroy equipment or other relevant objects after industrial accidents. Moreover, employers may readily protect themselves against liability for spoliation by preserving such objects, at least

until they determine whether the affected employee intends to pursue a third party action.

## Conclusion

The order granting summary judgment is reversed. Costs to appellant.

Stone (S. J.), P. J., and Gilbert, J., concurred.