109 Cal.Rptr.2d 417 (2001)
90 Cal.App.4th 902
KOREA SUPPLY COMPANY, Plaintiff and Appellant,
v.
LOCKHEED MARTIN CORPORATION et al., Defendants and Respondents.
No. B136410.
Court of Appeal, Second District, Division Four.
July 18, 2001.
Review Granted October 24, 2001.
*420 Blecher & Collins, Steven J. Cannata, David W. Kesselman and Maxwell M. Blecher, Los Angeles, for Plaintiff and Appellant.
O'Melveny & Myers, Irvine, Marc F. Feinstein, Marc S. Williams and Robert E. Willett, for Defendants and Respondents.
HASTINGS, J.
Plaintiff appeals from a judgment of dismissal after general demurrers were sustained without leave to amend. We agree that the first amended complaint sufficiently states causes of action for intentional interference with prospective advantage and unfair competition, and we reverse the judgment.

BACKGROUND
Appellant commenced this action on May 5, 1999, and filed a first amended complaint on June 22, 1999, after respondents interposed general demurrers to two of the three counts of the original complaint. In three counts, the first amended complaint alleges conspiracy to interfere with prospective economic advantage, interference with prospective economic advantage, and unfair competition pursuant to Business and Professions Code section 17200.[1] It alleges that appellant is a Korean corporation, doing business as a manufacturer's representative in the sale of military equipment to the Korean government.[2] In 1995 and 1996, appellant's client, MacDonald Dettwiller, and Loral Corporation, the predecessor of respondent Lockheed Martin Corporation submitted bids in competition with each other to sell military equipment to the Republic of Korea. Loral's bid was accepted, even though MacDonald Detwiller's bid was lower, and its equipment superior. If MacDonald Detwiller's bid had been accepted, appellant would have earned a commission of more than $30 million.
With regard to knowledge of appellant's commission relationship with MacDonald Dettwiller, and the intent to disrupt it, the first amended complaint alleges as follows: "Moreover, in securing the contract by wrongful means, Loral acted with full knowledge of the commission relationship between plaintiff and MacDonald Dettwiller *421 and knowing that its interference with the award of the contract on a competitive basis would cause plaintiff severe loss. In order to disrupt the relationship between the Korean government, MacDonald Dettwiller and the plaintiff and nullify the competitive and pricing advantages inherent to the SAR system manufactured by MacDonald Dettwiller, defendants Loral and Kim conspired, knowingly and intentionally, to induce and did knowingly and intentionally induce the Republic of Korea, through its authorized agencies, to award the SAR contract to Loral instead of Mac-Donald Dettwiller by employing wrongful means including bribes and sexual favors."
Respondents generally demurred to each of the three counts of the first amended complaint. The demurrers were sustained without leave to amend, and judgment was entered dismissing the action on September 7, 1999. Appellant's motion for reconsideration was denied on October 7, 1999, and appellant filed a timely notice of appeal from the judgment.

DISCUSSION
Appellant contends that it sufficiently pleaded a cause of action for interference with prospective economic advantage, and, in particular, that the element of intent was sufficiently pleaded with facts showing that respondents knew that appellant's expectation of a commission was certain or substantially certain to be disrupted as a result of their action, whether or not they directly intended to harm appellant. Appellant also contends that it sufficiently pleaded a cause of action for unfair competition, based on a violation of the Foreign Corrupt Practices Act. (See 15 U.S.C. § 78dd-2.)
On appeal from a judgment of dismissal entered after a general demurrer is sustained, we review the complaint to determine whether it states a cause of action, and if not, whether there is a reasonable possibility that it could be amended to do so. (MacLeod v. Tribune Publishing Co. (1959) 52 Cal.2d 536, 542, 343 P.2d 36.) "In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc, § 452.) "`We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law .... we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]'" (Blank v. Kirwan (1985) 39 Cal.3d 311, 318, 216 Cal.Rptr. 718, 703 P.2d 58.)
For reasons which will become apparent, we shall reverse the order in which the parties discuss the issues, and turn first to the third cause of action based on violation of the UCL.

1. The Unfair Competition Claim

Business and Professions Code section 17200 prohibits unfair competition, including unlawful, unfair, and fraudulent business acts. Section 17200 "borrows" violations from other laws by making them independently actionable as unfair competitive practices. (Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527.) An action under section 17200 may be predicated upon a violation of a federal law, so long as it is not preempted by the federal law. (Roskind v. Morgan Stanley Dean Witter & Co. (2000) 80 Cal.App.4th 345, 351-352, 95 Cal.Rptr.2d 258.)[3]
*422 Here, the third cause of action "borrowed" from the Federal Foreign Corrupt Practices Act, which prohibits, among other things, the bribing of a foreign government official for the purpose of influencing any act or decision in his official capacity and in violation of a lawful duty, or for the purpose of inducing him to use his official influence to obtain or retain business. (See 15 U.S.C. § 78dd-2(a)(1)(A), (B).)
Respondents contend that 15 United States Code section 78dd-2 impliedly bars a private action for unfair competition predicated on its violation, because the federal statute does not expressly provide for private enforcement. However, our Supreme Court has held that an action under the UCL may be predicated on a violation of a statute for which there is no private right of action, unless the predicate statute or the UCL expressly provides otherwise. (Stop Youth Addiction, Inc. v. Lucky Stores, Inc. (1998) 17 Cal.4th 553, 573, 71 Cal.Rptr.2d 731, 950 P.2d 1086.) There is no language in the UCL barring 15 United States Code section 78dd-2 as a predicate for an unfair competition action.
Respondents contend that Stop Youth Addiction, Inc. v. Lucky Stores, Inc. is distinguishable, because allowing an action under the UCL would "upset the calibrated enforcement and penalty scheme" under the Foreign Corrupt Practices Act, by interfering with the authority of the United States Department of Justice. Respondents rely on Lamb v. Phillip Morris, Inc. (6th Cir.1990) 915 F.2d 1024, cert. den. (1991) 498 U.S. 1086, 111 S.Ct. 961, 112 L.Ed.2d 1048, which held that while a private right of action is not expressly barred under 15 United States Code section 78dd-2, it is not expressly granted in the statute; thus, there is no direct private right of action. (915 F.2d at p. 1029.) Although the circuit court held that there could be no direct private right of action, it did not rule out a violation of section 78dd as a predicate to another privately prosecuted action, in that case, a federal antitrust action. (Id. at p. 1030.)
Thus, there is no express bar to predicating an unfair competition action on 15 United States Code section 78dd-2. Such an action would be barred only if it is preempted by the federal statute. (Roskind v. Morgan Stanley Dean Witter & Co., supra, 80 Cal.App.4th at pp. 351-352, 95 Cal.Rptr.2d 258.) Where a statute contains no express preemption, as here, preemption may be implied only to the extent that the California statute actually conflicts with the federal law, or if it appears that Congress intended the Federal Government to occupy the field exclusively. (Smiley v. Citibank (1995) 11 Cal.4th 138, 147, 44 Cal.Rptr.2d 441, 900 P.2d 690, affd. (1996) 517 U.S. 735, 116 S.Ct. 1730, 135 L.Ed.2d 25.)
State law does not conflict with federal law merely because there is an absence of a private right of action in the federal law. (Washington Mutual Bank v. Superior Court (1999) 75 Cal.App.4th 773, 783, 89 Cal.Rptr.2d 560.) A state law conflicts with federal law when compliance with both is impossible. (Florida Lime & Avocado Growers, Inc. v. Paul (1963) 373 U.S. 132, 142-143, 83 S.Ct. 1210, 10 L.Ed.2d 248.) Congress did not intend to occupy the field of unfair business practices. Since that is an area that States traditionally regulate, there is a presumption against preemption, which must be overcome by the party claiming preemption. *423 (California v. ARC America Corp. (1989) 490 U.S. 93, 101, 109 S.Ct. 1661, 104 L.Ed.2d 86.)
Respondents did not overcome the presumption against preemption enjoyed by Business and Professions Code section 17200. Indeed, they did not contend below, and do not contend here that federal law preempts a state unfair competition action based upon the Foreign Corrupt Practices Act. Nor have they asserted that compliance with both state and federal law is impossible, or that Congress intended to occupy the field.
Instead, respondents appear to contend, in effect, that the action is barred by the act of state doctrine, as it was sometimes interpreted prior to the United States Supreme Court's clarification in W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp. (1990) 493 U.S. 400, 406, 409-410, 110 S.Ct. 701, 107 L.Ed.2d 816, which held that in cases and controversies that may embarrass foreign governments, the court must deem the acts of foreign sovereigns taken within their own jurisdictions, as valid. Without specifically naming the act of state doctrine, respondents argue generally that the action would impair United States foreign policy interests. Such concerns are irrelevant here, at least at this stage of the proceedings, since the first amended complaint does not seek to invalidate Loral's contract with the government of Korea. (See W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., supra, 493 U.S. at pp. 408-410, 110 S.Ct. 701.)
Respondents also contend that no cause of action for unfair competition is stated because appellant has not alleged facts showing that it is entitled to any of the remedies provided by the UCL. While this issue was not presented by respondents in support of their demurrer, we will address it.
Respondents point out that only two types of remedies are afforded under the UCL: injunctive relief and restitution. They point out that appellant is not seeking injunctive relief, only damages, which are not allowed pursuant to the UCL. It is true that damages are not recoverable under the UCL. (Bank of the West v. Superior Court, supra, 2 Cal.4th at p. 1266, 10 Cal.Rptr.2d 538, 833 P.2d 545.) But merely categorizing appellant's claim as one for damages does not resolve the issue.
In Cortez v. Purolator Air Filtration Products Co. (2000) 23 Cal.4th 163, 96 Cal.Rptr.2d 518, 999 P.2d 706, the primary issue addressed by the court was whether a claim for unpaid wages was a claim for damages which would be precluded from treatment under the UCL. It noted: "`Damages,' as that term is used to describe monetary awards, may include a restitutionary element, but when the concepts overlap, the latter is easily identifiable." (Id. at p. 174, 96 Cal.Rptr.2d 518, 999 P.2d 706.) In concluding that the claim qualified as restitution under the UCL, the court held: "Section 17203 authorizes the court to fashion remedies to prevent, deter, and compensate for unfair business practices. In addition to injunctions, it authorizes orders that are necessary to prevent practices that constitute unfair competition and to make `orders or judgments ... as may be necessary to restore' to persons in interest any money or property acquired by unfair competition. [Citation.]" (Id. at p. 176, 96 Cal. Rptr.2d 518, 999 P.2d 706.)
Relying on Kraus v. Trinity Management Services, Inc., supra, 23 Cal.4th 116, 96 Cal.Rptr.2d 485, 999 P.2d 718 and Cortez v. Purolator Air Filtration Products Co., supra, 23 Cal.4th 163, 96 Cal.Rptr.2d 518, 999 P.2d 706, which disapproved of the concept of "fluid recovery" in UCL *424 actions, respondents argue that a claim of restitution under the UCL is necessarily limited to a return of money taken from persons who had an ownership interest in it. In support of this argument, they cite to page 127 of Kraus which defines "fluid recovery" as "a remedy that is necessary only when a defendant must disgorge money that is not to be returned to the persons from whom they were obtained...." We cannot agree that these cases stand for the proposition argued.
In Bank of the West v. Superior Court, supra, 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545, the Supreme Court generally addressed the issue of remedies under the UCL. "Section 17203, which incorporates the broad, statutory definition of `unfair competition,' permits `any court of competent jurisdiction' to enjoin `[a]ny person performing or proposing to perform an act of unfair competition....'(§ 17203.) The section also authorizes courts to make such orders as `may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.' [Citation.] The purpose of such orders is `to deter future violations of the unfair trade practice statute and to foreclose retention by the violator of its ill-gotten gains.' (Fletcher v. Security Pacific National Bank (1979) 23 Cal.3d 442, 449 [153 Cal.Rptr. 28, 591 P.2d 51] [interpreting the nearly identical language of section 17535]; see also People v. Superior Court (Jayhill) (1973) 9 Cal.3d 283, 288-289 & fn. 3 [107 Cal.Rptr. 192, 507 P.2d 1400, 55 A.L.R.3d 191].) The Legislature considered this purpose so important that it authorized courts to order restitution without individualized proof of deception, reliance and injury if necessary to prevent the use or employment of an unfair practice. [Citations.]" (2 Cal.4th at p. 1267, 10 Cal. Rptr.2d 538, 833 P.2d 545.)
"Section 17200 `is not confined to anticompetitive business practices, but is also directed toward the public's right to protection from fraud, deceit, and unlawful conduct. [Citation.] Thus, California courts have consistently interpreted the language of section 17200 broadly.'" [Citation.] "`The statute imposes strict liability. It is not necessary to show that the defendant intended to injure anyone.'" [Citations.] (South Bay Chevrolet v. General Motors Acceptance Corp. (1999) 72 Cal.App.4th 861, 877, 85 Cal.Rptr.2d 301.)
Under section 17204, an action under the UCL may be brought "by any person acting for the interests of itself ... or the general public."
The first amended complaint prays for disgorgement of profits unjustly earned by respondents. "An order that a defendant disgorge money obtained through an unfair business practice may include a restitutionary element, but is not so limited .... such orders may compel a defendant to surrender all money obtained through an unfair business practice even though not all is to be restored to the persons from whom it was obtained or those claiming under those persons. It has also been used to refer to surrender of all profits earned as a result of an unfair business practice regardless of whether those profits represent money taken directly from persons who were victims of the unfair practice." (Kraus v. Trinity Management Services, Inc., supra, 23 Cal.4th at p. 127, 96 Cal.Rptr.2d 485, 999 P.2d 718, italics added.)[4]
*425 We conclude that appellant adequately pleaded a cause of action under the UCL. We therefore turn back to the question of whether the same facts also adequately allege an intentional interference with prospective economic advantage.

2. The Claim for Intentional Interference

The elements of intentional interference with prospective economic advantage were first enunciated in Buckaloo v. Johnson (1975) 14 Cal.3d 815, 827, 122 Cal.Rptr. 745, 537 P.2d 865, and are usually stated as follows: "`"(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." [Citations.]'" (See e.g., LiMandri v. Judkins (1997) 52 Cal.App.4th 326, 339, 60 Cal.Rptr.2d 539, quoting Westside Center Associates v. Safeway Stores 23, Inc. (1996) 42 Cal. App.4th 507, 521-522, 49 Cal.Rptr.2d 793.)
The controversy here involves the third element, "intentional acts ... designed to disrupt the relationship." Respondents' demurrer and the court's ruling were based upon the premise that the third element required appellant to allege that respondents entertained the specific intent to disrupt the economic relationship to which the plaintiff was a partyappellant's agreement with MacDonald Dettwillerand that an intent to disrupt MacDonald Detwiller's expected economic relationship with the Korean government, even with knowledge of appellant's commission agreement and of the probable disruption of it, would not satisfy that third element.
The argument glosses over the unambiguous language of the pleading which alleges that respondents acted with knowledge of the commission agreement between appellant and MacDonald Dettwiller and that they acted with the intent to "disrupt the relationship between the Korean government, MacDonald Dettwiller and the plaintiff...."
Neither the parties nor we have found any California authority directly addressing the exact issue presented here: whether an agent expecting a commission has standing on its own to sue for interference with the primary contract.[5] Respondents cite Gomez v. Acquistapace (1996) 50 Cal. App.4th 740, 746, 57 Cal.Rptr.2d 821, which provides support for respondents' position in dictum. Gomez, however, is *426 not helpful to our discussion, because it did not involve the tort of interference with prospective economic advantage. Further it relied solely on Delia Penna v. Toyota Motor Sales, U.S.A., Inc. (1995) 11 Cal.4th 376, 393, 45 Cal.Rptr.2d 436, 902 P.2d 740, in support of its statement that interference with prospective economic advantage carried a "more rigorous intent requirement" than other torts, a ruling not made in Delia Penna.
Respondents also rely on Khoury v. Maly's of California, Inc. (1993) 14 Cal. App.4th 612, 17 Cal.Rptr.2d 708, in which the plaintiff alleged in a conclusory manner that defendant harbored an improper malicious purpose to destroy his business. (Id. at p. 618, 17 Cal.Rptr.2d 708.) A demurrer was sustained for failure to allege the facts behind the conclusions, and leave to amend was denied, because the facts of the case amounted to no more than a breach of contract. (Ibid) It did not purport to require the allegation of a malicious purpose directed at the plaintiff.
Respondents have cited federal authority in which the Ninth Circuit Court of Appeals attempted to anticipate what California courts would decide, given similar circumstances. (E.g., DeVoto v. Pacific Fid. Life Ins. Co. (9th Cir.1980) 618 F.2d 1340, 1347-1348.) It does not support the requirement of an allegation of purposeful intent directed specifically at the plaintiff in every case, and its holding is limited to circumstances where the interfering party's knowledge of consequences was imputed, not actual, and "the actor's conduct is not criminal or fraudulent, and absent some other aggravating circumstances." (Id. at p. 1347, citing Rest.2d Torts (1979) § 766, & com. j, § 767 & com. d, italics added.) In DeVoto, the plaintiffs had failed to carry their burden to prove an antitrust violation. (See 618 F.2d at pp. 1346-1347.)
Respondents also rely in part on in Seaman's Direct Buying Service, Inc. v. Standard Oil Co. (1984) 36 Cal.3d 752, 206 Cal.Rptr. 354, 686 P.2d 1158, overruled in part by Freeman & Mills, Inc. v. Belcher Oil Co. (1995) 11 Cal.4th 85, 88, 44 Cal. Rptr.2d 420, 900 P.2d 669, and disapproved in part by Delia Penna v. Toyota Motor Sales, U.S.A, Inc., supra, 11 Cal.4th at page 393, footnote 5, 45 Cal.Rptr.2d 436, 902 P.2d 740. In Seaman's, the Supreme Court held that to state a cause of action for interference with contract, "it is essential that plaintiff plead and prove that the defendant `intended to induce a breach thereof....'" Quoting the First Restatement of Torts, the Court explained: "`If the actor does not have this purpose, his conduct does not subject him to liability under this rule even if it has the unintended effect of deterring the third person from dealing with the other.' [Citation.]" (Seaman's Direct Buying Service, Inc. v. Standard Oil Co., supra, 36 Cal.3d at pp. 765-766, 206 Cal.Rptr. 354, 686 P.2d 1158.)
Whatever life Seaman's might still have, it has no effect on this case. The Supreme Court warned against applying the same standards both to interference with existing contract and interference with a prospective contractual or economic relationship. (Delia Penna, supra, 11 Cal.4th at p. 392, 45 Cal.Rptr.2d 436, 902 P.2d 740.) In any event, were we to apply the same standards, Seaman's would not control, because the Court more recently held with regard to actions for interference with performance of a contract, that the tort "does not require that the actor's primary purpose be disruption of the contract" where "the actor does not act for the purpose of interfering with the contract or desire it but knows that the interference is certain or substantially certain to occur as a result of his action." (Quelimane Co. v. Stewart Title Guaranty Co., supra, 19 Cal.4th at p. 56, 77 Cal.Rptr.2d 709, 960 P.2d 513.) *427 "The rule applies, in other words, to an interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action." (Id. at p. 56, 77 Cal.Rptr.2d 709, 960 P.2d 513, quoting Rest.2d Torts, § 766, com. j.)
In Delia Penna, the Court disapproved the pleading and proof requirements of Seaman's and Buckaloo. (Delia Penna, supra, 11 Cal.4th at p. 393, fn. 5, 45 Cal. Rptr.2d 436, 902 P.2d 740.) Further, the Court criticized its prior adherence in Seaman's to a First Restatement analysis "without reviewing or even mentioning intervening reevaluations of the tort by the Restatement Second, other state high courts and our own Court of Appeal." (Delia Penna, supra, 11 Cal.4th at p. 389, 45 Cal.Rptr.2d 436, 902 P.2d 740.) It directed courts to bring "a greater solicitude to those relationships that have ripened into agreements, while recognizing that relationships short of that subsist in a zone where the rewards and risks of competition are dominant." (Delia Penna, supra, 11 Cal.4th at p. 392, 45 Cal.Rptr.2d 436, 902 P.2d 740.) Applying that direction, the Court held that "a plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful `by some measure beyond the fact of the interference itself.'" (11 Cal.4th at pp. 392-393, 45 Cal.Rptr.2d 436, 902 P.2d 740.)[6]
We conclude that it is no longer appropriate to apply the elements formulated in Buckaloo in all actions for interference with prospective advantage (see Buckaloo v. Johnson, supra, 14 Cal.3d at p. 827, 122 Cal.Rptr. 745, 537 P.2d 865), since they were dependent upon the prima facie tort doctrine criticized in Delia Penna. (Delia Penna, supra, 11 Cal.4th at p. 389, 45 Cal.Rptr.2d 436, 902 P.2d 740.) Under the prima facie tort doctrine, the plaintiff was required to plead and prove culpable intent, and justification was an affirmative defense. The doctrine has, as stated by Justice Mosk in his concurring opinion in Delia Penna, placed undue focus on the interfering party's motive, contributing to the "common law's near incoherence on the tort of intentional interference with prospective economic advantage." (Delia Penna, supra, 11 Cal.4th at p. 402, 45 Cal.Rptr.2d 436, 902 P.2d 740; see also Myers, The Differing Treatment of Efficiency and Competition in Antitrust and Tortious Interference Law (1993) 77 Minn. L.Rev. 1097, 1120-1137, 1143-1144, 1151.) By contrast, the requirement of interference by an independently tortious act, Justice Mosk explained, makes the interfering party's motive irrelevant, and permits recovery by a known, but indirect victim of the interference directed at a third party. (Delia Penna, supra, 11 Cal.4th at pp. 408-409, 45 Cal.Rptr.2d 436, 902 P.2d 740.)
Thus, we need not determine whether the third of the Buckaloo elements, repeated by rote by courts [7] even after Delia *428 Penna, ever required specific culpable intent directed at the plaintiff, inasmuch as appellant's cause of action is not grounded upon the prima facie tort doctrine, but upon the allegation of an independent wrong committed with knowledge of the probable effect on its indirect victim, making respondents' motive irrelevant. Appellant's allegation that respondents knew of appellant's expectancy and interfered with it by independent wrongful conduct, causing appellant damage, is a sufficient statement of the cause of action.
Respondents urge us to affirm the judgment on the ground that the interference claim is barred by the two-year statute of limitations applicable to interference with prospective economic advantage. (See Code Civ. Proc, § 339, subd. 1; Knoell v. Petrovich (1999) 76 Cal.App.4th 164, 168, 90 Cal.Rptr.2d 162.) Respondents acknowledge that although a cause of action ordinarily accrues on the date of injury, or upon the occurrence of the last element essential to the cause of action, accrual may be delayed under the "discovery rule," or when it is fraudulently concealed by the defendant. (Bernson v. Browning-Ferris Industries (1994) 7 Cal.4th 926, 931, 30 Cal.Rptr.2d 440, 873 P.2d 613.) "The discovery rule protects those who are ignorant of their cause of action through no fault of their own. It permits delayed accrual until a plaintiff knew or should have known of the wrongful conduct at issue. [Citation.]" (April Enterprises, Inc. v. KTTV (1983) 147 Cal. App.3d 805, 832, 195 Cal.Rptr. 421.) Fraudulent concealment of a cause of action tolls the statute of limitations, during the time that the claim is undiscovered by the plaintiff, or until such time as the plaintiff, exercising reasonable diligence, should have discovered it. (Bernson v. Browning-Ferris Industries, supra, 7 Cal.4th at p. 931, 30 Cal.Rptr.2d 440, 873 P.2d 613.)
The action was commenced on May 5, 1999. The first amended complaint alleges that respondents' interference with its prospective economic advantage occurred in June 1996, but that appellant did not discover the wrong until October 1998. It is alleged that, with the intent to frustrate discovery, respondents paid bribes to avoid detection, concealed the bribes and sexual favors given to win the Korean contract, and filed false reports with the Securities and Exchange Commission, in which they failed to disclose the bribes and sexual favors. Respondents' acts of concealment prevented appellant from learning the truth, until October 1998, when Korean newspapers reported that respondent Kim had been investigated for giving bribes and sexual favors to military officers and government officials to influence the award of a related military contract. One of the officials involved was the Minister of National Defense, who was the ultimate decision maker with regard to the Loral contract.
Although the exact manner of appellant's discovery is not clearly stated in the first amended complaint, it is alleged that the investigation in Korea led to the discovery by United States intelligence agencies of an internal Loral memorandum, stating that it had retained Kim to represent it because of her connections with the highest Korean government officials. We infer that the reports in the press caused appellant to investigate, and that appellant found or heard about the memorandum.
Respondents contend that awarding the contract to the higher bidder with an inferior product would have put a prudent person on inquiry, and therefore caused the statutory period to run. Respondents *429 assert, in effect, that the first amended complaint shows, as a matter of law, that appellant had constructive notice of their wrongdoing. "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact." (Civ.Code, § 19.)
Whether the circumstances would put a reasonable person on notice is normally a question of fact, and may be resolved on demurrer only when there is only one legitimate inference to be drawn from the allegations of the complaint. (Saliter v. Pierce Brothers Mortuaries (1978) 81 Cal.App.3d 292, 299-300, 146 Cal. Rptr. 271.) Respondents make no attempt to show that bribery is the only legitimate inference to be drawn from the Korean government's award of the contract to the higher bidder with a product which appellant knew to be inferior. Further, respondents oversimplify the facts alleged. The first amended complaint also alleges that the Korean government announced that its decision to choose the higher bidder was related to concerns about its relations with the United States, which appellant had no reason to question.
Respondents also argue that the facts alleged in the first amended complaint do not plausibly establish the manner and timing of appellant's discovery. Factual allegations of the complaint must be assumed to be true for the purpose of reviewing a demurrer. (Committee on Children's Television, Inc. v. General Foods Corp. (1983) 35 Cal.3d 197, 213-214, 197 Cal.Rptr. 783, 673 P.2d 660.) Thus, our belief in the facts surrounding appellant's discovery is irrelevant to our inquiry. Whether or not appellant will be able to prove that a reasonably diligent plaintiff would not have discovered the wrongdoing earlier, it has been adequately alleged in the first amended complaint.

DISPOSITION
The judgment is reversed. Appellant shall have its costs on appeal.
CHARLES S. VOGEL, P.J. and EPSTEIN, J., concur.
NOTES
[1] The Legislature did not designate a title for the statutory scheme beginning with Business and Professions Code section 17200. In its most recent cases examining section 17200 et seq., the California Supreme Court described these sections as the unfair competition law. (See Kraus v. Trinity Management Services, Inc. (2000) 23 Cal.4th 116, 121, 96 Cal. Rptr.2d 485, 999 P.2d 718.) In earlier opinions, the Court had termed it the Unfair Business Practices Act. Bank of the West v. Superior Court (1992) 2 Cal.4th 1254, 1266, 10 Cal. Rptr.2d 538, 833 P.2d 545.) We follow the most recent practice and refer to this claim as one for unfair competition and we reference the collection of statutes giving rise to this claim as the UCL.
[2] We infer from this and other allegations of the first amended complaint that appellant is a broker, whose only compensation is in the form of commissions earned in the course of a sale, and that its client in the subject sale was MacDonald Dettwiller. This is not directly alleged, but all parties assume this to have been appellant's capacity, and there was no demurrer for uncertainty with respect to inferential pleading of facts. The defect was therefore waived (Lattin v. Hazard (1890) 85 Cal. 58, 62-63, 24 P. 611; 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 912, p. 371), and we shall treat such facts as properly pleaded. We have omitted the many evidentiary facts and legal conclusions from our summary.
[3] An example of such preemption may be found in KNB Enterprises v. Matthews (2000) 78 Cal.App.4th 362, 369-370, footnote 8, 92 Cal.Rptr.2d 713, where it was observed that an unfair competition claim could not be predicated upon a federal copyright infringement.
[4] We reject respondents' attempt to characterize disgorgement under the facts of this case as a fluid recovery remedy, which the Kraus Court held to be improper in a representative action in which no class has been certified. (See Kraus v. Trinity Management Services, Inc., supra, 23 Cal.4th at p. 137, 96 Cal.Rptr.2d 485, 999 P.2d 718.) This is not a representative action, and there is no issue of recovery by anyone who is not a party.

We also reject respondents' contention that the facts surrounding the bribes, sexual favors, and respondent Kim's authority to act on behalf of Loral, are not alleged with sufficient particularity to state a cause of action under Business and Professions Code section 17200. Stating a cause of action for unfair competition does not require the specific fact pleading required for a fraud cause of action. (Quelimane Co. v. Stewart Title Guaranty Co. (1998) 19 Cal.4th 26, 46, 77 Cal.Rptr.2d 709, 960 P.2d 513.) If anything, the first amended complaint provides more facts than necessary.
[5] The trial court agreed that MacDonald Dettwiller may have an interference claim, but "employees, suppliers, landlords, building construction contractors, property taxing entities, and income and franchise taxing entities do not have a claim. So it follows that some line must exist...." The claims of remote and unknown persons affected by the alleged interference were not before the trial court, and are irrelevant to this discussion.
[6] The Court left for another day the question of "adopting refinements to that element of the tort-requiring the plaintiff to prove, for example, that the defendant's conduct amounted to an independently tortious act, or was a species of anticompetitive behavior proscribed by positive law, or was motivated by unalloyed malice...." (Delia Penna, supra, 11 Cal.4th at p. 378, 45 Cal.Rptr.2d 436, 902 P.2d 740.) In his concurring opinion Justice Mosk suggested that proscribed conduct be limited to means that are independently tortious or a restraint of trade. (Delia Penna, supra, 11 Cal.4th at pp. 408-410, 45 Cal. Rptr.2d 436, 902 P.2d 740; see also, Rest.2d Torts, § 767, com. c. p. 31.) Respondents have not suggested that anti-competitive criminal conduct would not be sufficient.
[7] See e.g., LiMandri v. Judkins, supra, 52 Cal. App.4th at page 339, 60 Cal.Rptr.2d 539; Westside Center Associates v. Safeway Stores 23, Inc., supra, 42 Cal.App.4th at pages 521-522, 49 Cal.Rptr.2d 793.