GREEN HILLS SOFTWARE, INC.,
a Delaware corporation,
Plaintiff—Appellant,

v.

SAFEGUARD SCIENTIFICS AND SPC
PRIVATE EQUITY PARTNERS;
SPC Private Equity Partners, Defen-
dants—Appellees.

No. 01–55015.

D.C. No. CV–98–09854–LGB.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 5, 2002.

Decided April 22, 2002.

Before WARDLAW and W.
FLETCHER, Circuit Judges, and

FOGEL,* District Judge.

## MEMORANDUM **

Green Hills Software, Inc. ("Green Hills") appeals the district court's grant of summary judgment in favor of Safeguard Scientifics ("Safeguard") and SPC Private Equity Partners ("SPC") (collectively "Appellees") in Green Hills' action for intentional interference with prospective economic relations. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

■ The elements of a cause of action for intentional interference with prospective economic relations under California law are: (1) an economic relationship between the plaintiff and another containing a probability of future economic benefit, (2) knowledge by the defendant of the existence of the relationship, (3) intentional acts on the part of the defendant designed to disrupt the relationship, (4) actual disruption of the relationship, and (5) damages to the plaintiff proximately caused by the acts of the defendant. *Della Penna v. Toyota Motor Sales, U.S.A., Inc.,* 11 Cal.4th 376, 389, 45 Cal.Rptr.2d 436, 902 P.2d 740 (1995).

In *Della Penna,* the California Supreme Court held that "a plaintiff seeking to recover for an alleged interference with prospective contractual or economic relations must plead and prove ... that the defendant not only knowingly interfered with plaintiff's expectancy, but *engaged in conduct that was wrongful by some legal measure other than the fact of interference itself."* *Id.* at 393, 45 Cal.Rptr.2d 436, 902 P.2d 740 (emphasis added). The Supreme

Court, however, did not define the precise scope of wrongfulness. It wrote:

> [T]he case, if any, to be made for adopting refinements to that element of the tort-requiring the plaintiff to prove, for example, that the defendant's conduct amounted to an independently tortious act, or was a species of anticompetitive behavior proscribed by positive law, or was motivated by unalloyed malice-can be considered on another day, and in another case.

*Della Penna,* 11 Cal.4th at 378, 45 Cal. Rptr.2d 436, 902 P.2d 740.

California Courts of Appeal have set forth varying definitions of wrongfulness since *Della Penna. Compare PMC, Inc. v. Saban Entertainment, Inc.,* 45 Cal.App.4th 579, 602, 52 Cal.Rptr.2d 877 (1996) (" 'Defendant's liability may arise from improper motives or from the use of improper means. They may be wrongful by reason of a statute or other regulation, or a recognized rule of common law or perhaps an established standard of a trade or profession." ') (citation omitted), *with Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.,* 47 Cal.App.4th 464, 477, 54 Cal. Rptr.2d 888 (1996) ("[O]ur focus for determining the *wrongfulness* of those intentional acts should be on the defendant's objective conduct, and evidence of motive or other subjective states of mind is relevant only to illuminating the nature of that conduct."). As we recently observed, the precise type of wrongfulness necessary to trigger liability for intentional interference with prospective economic relations "remains very much an unresolved question in California." *See Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.,* 271 F.3d 825, 831 (9th Cir.2001).

---

\* The Honorable Jeremy D. Fogel, U.S. District Judge for the Northern District of California, sitting by designation.

\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

We have adopted the following standard for determining wrongfulness: "We conclude that ... the California Supreme Court would either eliminate motive, standing alone, as a basis for the wrongfulness element of the tort of intentional interference with prospective economic advantage or, more likely, import into the tort a limitation on motive-based causes of action similar to the one used under *Gantt* and its progeny." [1] *Id.* at 834.

■ Although the California Supreme Court has recently granted review in *Korea Supply Co. v. Lockheed Martin Corp.*, 90 Cal.App.4th 902, 109 Cal.Rptr.2d 417 (2001), in which the precise scope of wrongfulness in the context of the tort of intentional interference with prospective economic relations may be clarified, we decline to stay the instant appeal pending the Supreme Court's decision. Based on our reading of California case law, we predict that the Supreme Court will hold that an independently actionable claim of wrongful conduct is required to satisfy the standard announced in *Della Penna*. *See Marin Tug & Barge*, 271 F.3d at 834; *Arntz Contracting Co.*, 47 Cal.App.4th at 477, 54 Cal.Rptr.2d 888.[2]

■ Green Hills rests its claim of independently actionable wrongful conduct upon the tort of fraudulent misrepresentation. The elements of that tort are: (1) misrepresentation by way of a false representation, concealment or non-disclosure; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. *See Molko v. Holy Spirit Assn.*, 46 Cal.3d 1092, 1108, 252 Cal.Rptr. 122, 762 P.2d 46 (1988), *superceded on*

*other grounds by* Cal. C. Civ. P. § 437c(*o*)(2). Green Hills insists that Safeguard and SPC made various misrepresentations to it in an attempt to prevent Daniel O'Dowd's buy-out of Glen Hightower and subsequently selling Hightower's shares to Green Hills, and to induce O'Dowd to submit to Appellees' trilateral deal. The alleged misrepresentations include: (1) Samuel Plum's statement to O'Dowd on August 12, 1998 that SPC was moving forward with financing Hightower's buy-out; (2) Wayne Weisman's statement to Green Hills on August 19, 1998 that Safeguard intended to move forward with financing Hightower's buy-out; and (3) Plum's statement to Green Hills on August 26, 1998 that Safeguard and SPC were in the process of making an acquisition.

Green Hills has not established that Appellees' representations were false. Appellees had 90 days from June 26, 1998 (the day O'Dowd triggered the buy-out provision) to decide whether to finance Hightower's buy-out. The representations to Green Hills were made at a time when Appellees still were conducting due diligence and before their investment committee had made a final decision. Furthermore, Plum and Weisman expressly stated to Green Hills that they had not presented the buy-out proposal to their investment committee *for approval*. Appellees' representations were opinions and expressions of future intent made before a final decision had been reached with respect to the buy-out. *See San Francisco Design Center Assocs. v. Portman Cos.*, 41 Cal. App.4th 29, 50 Cal.Rptr.2d 716, 724 (1995),

1. *Gantt v. Sentry Ins.*, 1 Cal.4th 1083, 1094–95, 4 Cal.Rptr.2d 874, 824 P.2d 680 (1992), held that only specifically proscribed motives, such as constitutional or statutory violations, are actionable.

2. *See also Della Penna*, 11 Cal.4th at 408, 45 Cal.Rptr.2d 436, 902 P.2d 740 (Mosk, J., concurring) ("It follows that the tort may be satisfied by intentional interference with prospective economic advantage *by independently tortious means*.")

*review dismissed and ordered published by* 50 Cal.Rptr.2d 698, 911 P.2d 1373 (1996) ("[A]n actionable misrepresentation must be made about past or existing facts; statements regarding future events are merely deemed opinions."); *see also Masters v. San Bernardino County Employees Ret. Assn.,* 32 Cal.App.4th 30, 41–42, 37 Cal.Rptr.2d 860 (1995) (an intentional misrepresentation is " '[t]he suggestion, as a fact, of that which is not true, by one who does not believe it to be true.' ") (citation omitted).

We also hold that Green Hills has not established that it reasonably relied upon Appellees' representations. The record indicates that O'Dowd was unable to complete his buy-out and sale of stock to Green Hills due to Hightower's demand for arbitration on August 24, 1998 and the ensuing preliminary injunction. Because the injunction prohibited O'Dowd from completing his buy-out and sale of shares to Green Hills, Appellees' representations were not the immediate cause of the harm suffered by Green Hills. Consequently, there was no reliance. *See Alliance Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1239, 44 Cal.Rptr.2d 352, 900 P.2d 601 (1995) ("Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations . . . .").

Even if the representations had a negative impact on Green Hills-by causing turmoil, loss of employee morale and temporary reduction of productivity-Green Hills could not have reasonably relied upon them. It knew that financing of Hightower by Safeguard and SPC was subject to approval by their investment committee. Plum and Weisman stated to Green Hills that the buy-out proposal had not been presented for approval to the investment committee. Green Hills' reliance, if any, was therefore unreasonable. *See Guido v.*

*Koopman,* 1 Cal.App.4th 837, 843, 2 Cal. Rptr.2d 437 (1991) ("[W]hether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts."); *see also Gray v. Don Miller & Associates, Inc.,* 35 Cal.3d 498, 503, 198 Cal.Rptr. 551, 674 P.2d 253 (1984).

We conclude that Green Hills can neither establish the falsity of Appellees' representations nor demonstrate that it justifiably relied on those representations. Therefore, Green Hills cannot establish that Appellees' conduct amounted to fraudulent misrepresentation. Consequently, its claim for intentional interference with prospective economic relations fails because it cannot establish that Appellees' conduct is independently actionable. *See Marin Tug & Barge,* 271 F.3d at 834; *Arntz Contracting Co.,* 47 Cal.App.4th at 477, 54 Cal.Rptr.2d 888.

AFFIRMED.