[No. A052006. First Dist., Div. Five. Dec. 12, 1991.]

DIANA L. GUIDO et al., Plaintiffs and Appellants, v.
CHARLES KOOPMAN, Defendant and Respondent.

## COUNSEL

McTernan, Stender & Wash and Marvin Stender for Plaintiffs and Appellants.

Drevlow, Murray & Payne and Mary S. Cain for Defendant and Respondent.

## OPINION

**HANING, Acting P. J.**—Plaintiffs and appellants Diana L. Guido and Donald Schwartz, a married couple, appeal from a summary judgment, enforcing a release from all liability, in favor of defendant and respondent Charles Koopman, doing business as The Academy of Equestrian Arts (the Academy). Appellants contend the release is unenforceable because it was executed in reliance on respondent's misrepresentation that it was unenforceable. We affirm.

### FACTS AND PROCEDURAL HISTORY

Guido filed her complaint against three groups of defendants for personal injuries allegedly resulting from three separate, sequential accidents during

the summer of 1988: two automobile accidents and a horseback riding accident. These incidents were unrelated, but were joined in the complaint because "[p]laintiff is in doubt as to which of the defendants . . . she is entitled to redress because there is a question as to which defendant is liable and to what extent for injuries, as she was injured in each incident." Guido's husband, Donald Schwartz, filed a separate action for loss of consortium, and the two actions were consolidated.

The summary judgment motion was brought by respondent and is addressed solely to the cause of action against him involving the horseback riding accident.

On September 29, 1987, Guido visited the Academy to inquire about taking horseback riding lessons from respondent. At that time she signed a document entitled "Release," given to her by respondent. That document reads:

"RELEASE

"I HEREBY RELEASE [THE ACADEMY], CHARLES KOOPMAN, DONNA KOOPMAN, MANAGERS, TRAINERS, INSTRUCTORS AND EMPLYEES [sic] OF AND FROM ALL CLAIMS WHICH MAY HEREAFTER DEVELOP OR ACCRUE TO ME ON ACCOUNT OF, OR BY REASON OF, ANY INJURY, LOSS OR DAMAGE, WHICH MAY BE SUFFERED BY ME OR TO ANY PROPERTY, BECAUSE OF ANY MATTER, THING OR CONDITION, NEGLIGENCE OR DEFAULT WHATSOEVER, AND I HEREBY ASSUME AND ACCEPT THE FULL RISK AND DANGER OF ANY HURT, INJURY OR DAMAGE WHICH MAY OCCUR THROUGH OR BY REASON OF ANY MATTER, THING OR CONDITION, NEGLIGENCE OR DEFAULT, OF ANY PERSON OR PERSONS WHATSOEVER."

After signing the release, Guido took lessons from respondent, as often as twice a week, until the accident on June 16, 1988, when she allegedly was thrown from one of respondent's horses.

Respondent's motion for summary judgment was based, in part, on the ground that the waiver precluded Guido from pursuing any claims against him. The trial court found there was no triable issue of any material fact and granted summary judgment for respondent.

DISCUSSION

"[S]ummary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law. . . ." (Code Civ. Proc., § 437c, subd. (c).) The issues presented are whether the release is voidable and, if so, whether the undisputed facts prevent appellants from avoiding the release.

Appellants advance two theories for avoidance of the release: First, in Guido's declaration in opposition to respondent's summary judgment motion, she states: ". . . I am an attorney. When I signed the release it was my understanding that releases from negligence were against public policy. [¶] . . . [¶] . . . I am not an expert on horses. But I do not think that an inherent risk of horseback riding is being thrown off of a horse . . . ." Second, although not mentioned in Guido's declaration, appellants argued to the trial court, as she does on appeal, that respondent told Guido the release was "meaningless."

■ With regard to appellants' initial contention regarding the legality of the release, they are in error. Civil Code section 1668 provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from [the] responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." This statute has been interpreted to mean that "a contract exempting from liability for ordinary negligence is valid where no public interest is involved . . . ." (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 631, p. 569; *Tunkl* v. *Regents of University of California* (1963) 60 Cal.2d 92, 97 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693]; *Buchan* v. *United States Cycling Federation, Inc.* (1991) 227 Cal.App.3d 134, 148-149 [277 Cal.Rptr. 887].)

Public interest or policy is generally defined by the constitution, statutes or judicial precedent. "In placing particular contracts within or without the category of those affected with a public interest, the courts have revealed a rough outline of that type of transaction in which exculpatory provisions will be held invalid. Thus the attempted but invalid exemption involves a transaction which exhibits some or all of the following characteristics. It concerns a business of a type generally thought suitable for public regulation. The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. In exercising a superior bargaining power the party confronts the public with a

standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents." (*Tunkl* v. *Regents of University of California, supra,* 60 Cal.2d at pp. 98-101, fns. omitted.)

■ There was a time during the development of this nation, particularly during the early westward migration, that one's survival frequently depended upon a good horse and the ability to remain in the saddle. Indeed, legend has it that so vital was the horse to our well-being in the American West that horse thieves were routinely hanged, with a dispatch that bore little resemblance to contemporary notions of due process. However, for better or worse, the times have changed, and except for a few working cattle ranches where the cow pony has not been completely replaced by the pickup truck, equestrian activities are largely confined to the entertainment arena.

We are unaware of any constitutional or statutory provision that would place horseback riding within the "public interest" category. Like the court in *Buchan,* we are also unaware of any case in the sports or recreation field that has voided such a release on public interest or public policy grounds. (*Buchan* v. *United States Cycling Federation, Inc., supra,* 227 Cal.App.3d at p. 149.) Similar releases have been upheld for activities that are equally, if not more, hazardous than horseback riding, such as bicycle racing (*ibid.*), motorcycle dirt bike racing (*Kurashige* v. *Indian Dunes, Inc.* (1988) 200 Cal.App.3d 606 [246 Cal.Rptr. 310]), white-water rafting (*Saenz* v. *Whitewater Voyages, Inc.* (1990) 226 Cal.App.3d 758 [276 Cal.Rptr. 672]), scuba diving (*Madison* v. *Superior Court* (1988) 203 Cal.App.3d 589 [250 Cal.Rptr. 299]) and skydiving. (*Hulsey* v. *Elsinore Parachute Center* (1985) 168 Cal.App.3d 333 [214 Cal.Rptr. 194].)

As to appellants' argument that the release is ineffective because Guido did not think being thrown off a horse was an inherent risk of horseback riding, we are of the contrary view—that it is one of the most obvious risks of that activity, and readily apparent to anyone about to climb on a horse. The cases of injuries from horseback riding are numerous, and we have found none which describe this risk as unexpected or extraordinary. (See, e.g., *Palmquist* v. *Mercer* (1954) 43 Cal.2d 92 [272 P.2d 26]; *Dorobek* v. *Ride-A-While Stables* (1968) 262 Cal.App.2d 554 [68 Cal.Rptr. 774]; *Griffin* v. *Sardella* (1967) 253 Cal.App.2d 937 [61 Cal.Rptr. 834]; *O'Brien* v. *Gateway Stables* (1951) 104 Cal.App.2d 317 [231 P.2d 524].) In fact, Guido admitted she was "bucked" from a different horse a few months before this accident.

For their second contention—that respondent advised Guido the release was "meaningless"—appellants rely on Guido's deposition testimony, submitted by respondent in support of his summary judgment motion. In her deposition Guido testified she "just didn't feel comfortable signing something that said 'Release' on it on the top." However, she signed it without reading it because respondent advised her, ". . . It doesn't mean anything. It is something that I need to have you sign, because my insurance company won't let me give lessons unless I have people sign this. [¶] . . . As a matter of fact, the insurance company wants me to give the students this long detailed form, which I don't do, because it scares them away when they see this long, detailed form."

"It is well established that a party to an agreement induced by fraudulent misrepresentations or nondisclosures is entitled to rescind, notwithstanding the existence of purported exculpatory provisions contained in the agreement. [Citation.]" (*Danzig* v. *Jack Grynberg & Associates* (1984) 161 Cal.App.3d 1128, 1138 [208 Cal.Rptr. 336]; Civ. Code, § 1689, subd. (b)(1).) The representations need not be made with knowledge of actual falsity but also include the "false assertion of [a] fact by one who has no reasonable grounds for believing his own statements to be true, and when made with [the] intent to induce the other to alter his position, to his injury. [Citation.]" (*In re Cheryl E.* (1984) 161 Cal.App.3d 587, 599 [207 Cal.Rptr. 728]; Civ. Code, § 1572, subd. 2.)

The existence of actual fraud is always a question of fact. (Civ. Code, § 1574; *Blankenheim* v. *E. F. Hutton & Co.* (1990) 217 Cal.App.3d 1463, 1475 [266 Cal.Rptr. 593].) Justifiable reliance is an essential element of a claim for fraudulent misrepresentation, and the reasonableness of the reliance is ordinarily a question of fact. (*Seeger* v. *Odell* (1941) 18 Cal.2d 409, 414-415 [115 P.2d 977, 136 A.L.R. 1291]; *Danzig* v. *Jack Grynberg & Associates, supra,* 161 Cal.App.3d at p. 1138.) However, whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 289, p. 301.)

Guido's deposition testimony on which appellants rely also reveals that she is a practicing attorney and uses releases in her practice. In essence, she is asking this court to rule that a practicing attorney can rely on the advice of an equestrian instructor as to the validity of a written release of liability that she executed without reading. In determining whether one can reasonably or justifiably rely on an alleged misrepresentation, the knowledge, education and experience of the person claiming reliance must be considered. (*Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 503

[198 Cal.Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763]; *Seeger* v. *Odell, supra,* 18 Cal.2d at p. 415.) Under these circumstances, we conclude as a matter of law that any such reliance was not reasonable.

The summary judgment is affirmed.

King, J., and Poché, J.,* concurred.

Appellants' petition for review by the Supreme Court was denied February 26, 1992.

---

*Associate Justice of the Court of Appeal, First District, Division Four, sitting under assignment by the Chairperson of the Judicial Council.