108 F.3d 338
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
INFORMATION SYSTEMS & NETWORKING CONSULTANTS, L.P.;
Software by Fax (PYT) Ltd.; and First National
Bank of Southern Africa Limited,
Plaintiff-Appellants,
v.
Mark ROBINSON; Philip Arnold; Fusion International Trading
Inc., d/b/a Fusion International, Inc.; Novax
International, Inc., Defendant-Appellees.
 No. 95-55831.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1996.
Decided Dec. 16, 1996.
 
 Before: GOODWIN, WIGGINS, and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiffs Information Systems & Networking Consultants (ISNC), Software by Fax (SBF), and First National Bank of Southern Africa LimitedB appeal the summary judgment in favor of the defendants in their action for damages caused by violation of civil RICO statutes, 18 U.S.C. § 1961 et seq., and based on pendant common law claims of fraud and misrepresentation.
 
 
 3
 The district court held the plaintiffs' claims barred by a release ISNC entered into with the defendants and held that the plaintiffs failed to raise a genuine issue that the release had been induced by fraud. We have jurisdiction under 28 U.S.C. § 1291 and reverse.
 
 BACKGROUND
 
 4
 FNB, a South African commercial bank, established ISNC, a wholly-owned subsidiary in Wilmington Delaware, to act as a consultant and purchasing agent for computer equipment and supplies in the United States. SBF, also a subsidiary of FNB, sourced computer goods for FNB and other international clients. FNB sent one of its technical managers, Desmond Rothenberg, to Delaware to head ISNC.
 
 
 5
 Defendant Mark Robinson (a California commodities dealer), defendant Philip Arnold (who was, at the time, a consultant and purchasing agent for SBF), and Mark Morris (then a manager with SBF) joined with Rothenberg to form a computer supply business called Novax. Neither Arnold nor Rothenberg disclosed to FNB their interest in Novax. Beginning in February 1990, ISNC purchased from Novax computer hardware which turned out to be defective. SBF subsequently fired Arnold when it became aware that he had been ordering merchandise without authority. Rothenberg, however, continued to work for the plaintiffs, who knew nothing of his role in Novax.
 
 
 6
 In October 1991, the defendants offered to take back the defective hardware in exchange for plaintiffs' purchase of several thousand IBM OS/2 software licenses from Novax at a fair price. Robinson and Arnold promised to show the plaintiffs a "paper trail" verifying the authenticity of the licenses. The defendants gave Rothenberg a $50,000 Mercedes Benz. Rothenberg, in turn, assured the plaintiffs that the price was fair and personally approved the license cards when they arrived. When the first shipment of licenses was delivered, Robinson produced documents demonstrating that the cards had been purchased from a well-known IBM distributor. The plaintiffs presented evidence in the district court that these documents were forgeries.
 
 
 7
 The plaintiffs had agreed to purchase upgrades to the software at such time as IBM released the new version. In March 1992, however, before the final payment was due, the plaintiffs learned that IBM was going to upgrade existing licenses free of charge. The plaintiffs therefore objected to paying Novax for the upgrades. The defendants proposed a settlement under which the plaintiffs would pay Novax an additional $352,000 for the license cards, but no money for the upgrades. Before agreeing to the settlement, plaintiffs directed Rothenberg to verify with IBM that the license cards were authentic. Rothenberg reported that he had personally confirmed that IBM would honor and upgrade the licenses.
 
 
 8
 The plaintiffs then agreed to the proposed settlement and ISNC signed a release that included language discharging the defendants from known and unknown claims. Plaintiffs presented evidence in the district court that several months later, when ISNC submitted the cards to IBM for upgrades, they learned that the licenses were counterfeit.
 
 FRAUDULENT INDUCEMENT OF THE RELEASE
 
 9
 We review de novo the district court's grant of summary judgment. See Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). We view the evidence in the light most favorable to the plaintiffs and must determine whether there are any genuine issues of fact for trial and whether the district court correctly applied the relevant substantive law. See id. Whether reliance is justifiable is a question of fact. See Guido v. Koopman, 2 Cal.Rptr.2d 437, 440 (Cal.Ct.App.1991). The question may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts. See id. The defendants in this case were thus entitled to summary judgment only if no rational trier of fact could find that ISNC, FNB, and SBF's reliance on the defendants' assertions of authenticity was reasonable. See General Am. Life Ins. Co. v. Castonguay, 984 F.2d 1518, 1520 (9th Cir.1993).
 
 
 10
 We hold that the plaintiffs have presented ample evidence of fraud to justify submission of their claim of fraud in the release to a trier of fact. The plaintiffs introduced evidence that the license cards they received were packaged in a way that IBM never packaged its software licenses. They offered proof that IBM refused to honor these licenses. Although the plaintiffs were understandably suspicious of the defendants because of earlier disappointing dealings with them, they had requested and received assurances from Arnold that the authenticity of the licenses would be verified through a "paper trail." The defendants provided plaintiffs with a copy of a purchase agreement from an authorized IBM dealer. The plaintiffs submitted evidence that the signatures on this agreement had been forged. Officers from the IBM distributor testified that the transaction reflected on this sales agreement never occurred.
 
 
 11
 Further, the plaintiffs relied on assurances by their own employee, Rothenberg, that he had personally verified the licenses with IBM. They presented evidence from which a trier of fact could infer that Rothenberg had been bribed by the defendants. We cannot say from these facts that no rational trier of fact could find it reasonable for the plaintiffs to have relied on the defendants numerous claims, coupled with documentary evidence, that the licenses were authentic. Because a rational trier of fact might find this reliance justified, it was error to grant summary judgment based upon the challenged release.
 
 
 12
 Because we hold that the plaintiffs have demonstrated a genuine issue of fact regarding whether the defendants induced them to sign the release through fraud, we do not reach the questions regarding the scope of the release.
 
 
 13
 REVERSED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3