Filed 5/21/14  Lifeline Funding v. Johnston CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LIFELINE FUNDING, LLC, Plaintiff and Respondent, v. CARTER JOHNSTON et al., Defendants and Appellants. | D063745 (Super. Ct. No. 37-2011-000701164-CU-FR-EC) |

APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed.

The Law Office of Richard L. Knight and Richard L. Knight for Defendants and Appellants.

Jones Day and Edward P. Swan, Jr., for Plaintiff and Respondent.

Plaintiff Lifeline Funding, LLC doing business as Us Claims (Lifeline), a litigation funding company, provided litigation funding to defendants Deborah Tumlinson and Douglas Tumlinson (together, the Tumlinsons) at the request of their attorney, defendant Carter Johnston.  That funding was sought for litigation the

Tumlinsons and Johnston represented they filed related to damages their home in Ramona suffered as a result of a wildfire.

Lifeline thereafter filed a lawsuit against the Tumlinsons and Johnston claiming that the Tumlinsons, through Johnston, misrepresented that they had settled their case against SDG&E for $2.49 million, and also that Johnston falsely represented that he acted as their attorney in that litigation. After a four-day bench trial, the court found the Tumlinsons and Johnston liable for fraud and the Tumlinsons liable for conversion and breach of contract, awarding Lifeline $1,559,119 in compensatory damages, as well as punitive damages in the amount of $6,000 against Johnston and $60,000 against the Tumlinsons.

On appeal, the Tumlinsons and Johnston assert that (1) the court erred in finding liability for fraud because Lifeline did not reasonably rely on their misrepresentations, (2) there is no substantial evidence to support liability for conversion, (3) there is no substantial evidence to support liability for punitive damages, (4) the court erred in denying Deborah Tumlinson's request to fire her attorney during trial, and (5) the court erred in refusing to continue the trial when she was hospitalized. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual Background*

Lifeline is a litigation funding company based in Moorestown, New Jersey. The Tumlinsons lived in a home in Ramona, California. After a wildfire damaged their residence, the Tumlinsons joined litigation related to the fire that was brought against SDG&E. After their original attorney, Gerald Singleton, terminated his representation of

the Tumlinsons due to their failure to respond to his requests for information, they represented themselves in propria persona. At no time did Johnston represent the Tumlinsons during that litigation.

Despite the fact that Johnston did not represent the Tumlinsons during the SDG&E litigation, he applied for litigation funding from Lifeline on behalf of the Tumlinsons. In applying for the funding, Johnston repeatedly misrepresented that he was the Tumlinsons' attorney in the SDG&E litigation. In applying for the funding, Johnston and the Tumlinsons falsely represented that they had settled their case against SDG&E for $2.49 million.

Lifeline undertook an investigation prior to authorizing the funding for the Tomlinsons' litigation. Their representative, Rudolph DeGeorge II, spoke with Johnston on the phone, and Johnston confirmed the representations he had previously made and described the mediation conference that resulted in the alleged settlement. DeGeorge also spoke on the phone with Mrs. Tumlinson, who provided the Tumlinsons' social security numbers so that Lifeline could ensure that the Tumlinsons had no judgments or liens that would prevent the litigation funding. Mrs. Tumlinson confirmed Johnston's representations concerning the settlement.

Johnston and the Tumlinsons also sent Lifeline pleadings purportedly from the SDG&E litigation with the attorney caption whited out to conceal the identity of their former attorney as their representative in that litigation. They also sent Lifeline a draft settlement agreement with a signature page that represented Johnston was their attorney.

3

The draft agreement contained a handwritten note from Mrs. Tumlinson stating that she and Mr. Tumlinson had initialed the agreement and sent it to SDG&E.

Based upon those representations, Lifeline agreed to provide over $700,000 in funding to the Tumlinsons, in exchange for the Tumlinsons selling to Lifeline an interest in the $2.49 million settlement they had reached with SDG&E. They have not repaid those funds.

B. *Procedural Background*

In October 2011 Lifeline filed a complaint against Johnston and the Tumlinsons, alleging fraud, conversion, breach of contract and breach of the covenant of good faith and fair dealing. Prior to trial, the Tumlinsons and Johnston agreed to waive their right to a jury trial.

Thereafter, Lifeline brought a motion seeking to disqualify Johnston as the Tumlinsons' counsel based upon the fact he was also named as a defendant in the case. The Tumlinsons opposed the motion, asserting they made an "informed decision" to retain him as counsel and that disqualification would force them to "seek other counsel and bring a new attorney up to date at great expense." Based upon the Tumlinson's position, the court denied Lifeline's motion.

However, on the first day of trial the Tumlinsons asked to fire Johnston and find new counsel. The court denied the motion as a delay tactic. Thereafter, Mrs. Tumlinson claimed to be ill. On the second day of trial, Mrs. Tumlinson claimed to have fainted outside the courtroom and the court continued the trial until the following day while she and Mr. Tumlinson went to the hospital. On the third and fourth days the court refused to

continue the trial further while the Tumlinsons chose to remain at the hospital and were represented in court by Johnston. The court permitted Johnston to present as testimony the Tumlinsons' depositions, to the extent they did not invoke the Fifth Amendment.

At the conclusion of trial, the court found the Tumlinsons and Johnston liable for fraud, and the Tumlinsons liable for conversion and breach of contract, and issued a statement of decision detailing its findings. In doing so, the court concluded that the Tumlinsons and Johnston made false or misleading representations with knowledge of their falsity, and that Lifeline actually relied on those representations. On the issue of whether Lifeline's reliance was reasonable, the court found the evidence to be conflicting. The court noted that (1) had Lifeline conducted its own search of the SDG&E litigation file, it would have discovered that Johnston was not the Tomlinsons' attorney; (2) if Lifeline had requested a fully executed settlement agreement defendants could not have produced one; and (3) Lifeline's own investigation revealed that the Tumlinsons had tax liens of over $50,000.

The court compared that with the evidence that (1) Johnston, an attorney with no history of discipline, corroborated the Tumlinsons' misrepresentations that he represented them in the SDG&E litigation and that there was a substantial settlement with an imminent distribution date; (2) the Tumlinsons and Johnston concealed their misrepresentations by sending pleadings with attorney information whited out; and (3) Johnston told Lifeline that the mediation that resulted in the settlement was partially confidential, explaining why they could not provide a fully executed settlement agreement.

5

Ultimately, the court resolved the conflicting evidence in favor of Lifeline, concluding that Lifeline was entitled to assume that Johnston would uphold his legal and ethical duties to counsel his clients to do only legal and ethical acts and to use only those means consistent with the truth.

## DISCUSSION

### I. *REASONABLE RELIANCE TO SUPPORT FRAUD CLAIM*

The Tumlinsons do not contend that that they did not intentionally mislead Lifeline to obtain funding. Instead, they assert that they are not liable for fraud because Lifeline did not reasonably rely on their intentional misrepresentations. This contention is unavailing.

#### A. *Applicable Authority*

When reliance is an element of a cause of action, that reliance must be reasonable. (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239.) "Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction." (*Ibid*.) "Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact." (*Blankenheim v. E. F. Hutton & Co.* (1990) 217 Cal.App.3d 1463, 1475.)

" 'A lawyer communicating on behalf of a client with a nonclient may not . . . [¶] . . . knowingly make a false statement of material fact . . . to the nonclient . . . .'

6

[Citation.] . . . 'A misrepresentation can occur through direct statement or through affirmation of a misrepresentation of another, as when a lawyer knowingly affirms a client's false or misleading statement.' " (*Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, 69, quoting Rest.3d Law Governing Lawyers, § 98, com. c, p. 58.) *Shafer* further noted: " 'In general, a lawyer who makes a fraudulent misrepresentation is subject to liability to the injured person when the other elements of the tort are established . . . .' [Citation.] This rule 'applies equally to statements made to a sophisticated person, such as to a lawyer representing another client, as well as to an unsophisticated person.' [Citation.] 'Misrepresentation is not part of proper legal assistance . . . .' " (*Shafer*, *supra*, at pp. 69-70, quoting Rest.3d, *supra,* § 98, com. g, p. 59, com. b, p. 58, § 56, com. f, p. 418.)

We review a court's factual findings under the substantial evidence standard of review. (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 500-501.) "Under the substantial evidence standard of review, our review begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the trial court's factual determinations. [Citations.] Substantial evidence is evidence of ponderable legal significance, reasonable in nature, credible, and of solid value. [Citation.] The substantial evidence standard of review applies to both express and implied findings of fact made by the court in its statement of decision." (*Id.* at p. 501.)

7

B.  *Analysis*

As we have discussed, *ante*, the evidence shows that the Tumlinsons and Johnston repeatedly misrepresented that Johnston was the Tumlinson's attorney in the SDG&E litigation and that the Tumlinsons had settled their case against SDG&E for $2.49 million.

The Tumlinsons and Johnston assert, however, that Lifeline did not reasonably rely on these misrepresentations because its representative, DeGeorge, was an attorney with experience in these types of matters and because DeGeorge discovered that Mrs. Tumlinson had lied about not having tax liens.  The judge did consider these facts and concluded that they weighed against Lifeline's position.  Ultimately, however, the court concluded that the Tumlinsons and Johnston's concealment of the truth of more relevant facts, such as Johnston's representation he represented the Tumlinsons in the SDG&E litigation and that $2.49 million was forthcoming, outweighed those facts.  In assessing whether substantial evidence supports the court's findings, we " ' "do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." ' "  (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

Further, Tumlinsons and Johnston's contention that Lifeline's investigation was negligent is unavailing because they committed intentional fraud:  " 'Negligence on the part of the plaintiff in failing to discover the falsity of a statement is no defense when the misrepresentation was intentional rather than negligent.' "  (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at pp. 1239-1240.)

8

The Tumlinsons and Johnston's citation to *Carpenter v. Hamilton* (1936) 18 Cal.App.2d 69 for the proposition that, having undertaken its own investigation and discovered the falsity of one representation, Lifeline may not rely on other statements made by them is unavailing. As the California Supreme Court explained in in *Shearer v. Cooper* (1943) 21 Cal.2d 695, 704, the rule announced in *Carpenter* was "to close the door to false claims of reliance" and cannot be applied to "afford with impunity the opportunity for fraud." Here the question is whether Lifeline's reliance was reasonable, not whether Lifeline *actually* relied on the misrepresentations. It is undisputed that Lifeline relied on their representations. Moreover, as we have noted, negligence in discovering the falsity of a representation is no defense when the misrepresentation was intentional. (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at pp. 1239-1240.)

Similarly, the Tumlinsons' and Johnston's reliance on *Guido v. Koopman* (1991) 1 Cal.App.4th 837 (*Guido*) for the proposition that as an attorney DeGeorge could not have reasonably relied on "legal matters" is unavailing. There, the Court of Appeal held that an attorney, who was injured while horseback riding, could not avoid a signed liability release based on the fact the owner of the equestrian facility stated the release was "meaningless." (*Id.* at p. 841.) The Court of Appeal concluded that any such reliance was not reasonable as a matter of law. (*Id.* at pp. 843-844.)

*Guido* does not assist the Tumlinsons and Johnston. First, whether a release is valid is a legal conclusion. A plaintiff "may not justifiably rely upon mere statements of opinion, including legal conclusions drawn from a true set of facts." (*Seeger v. Odell*

9

(1941) 18 Cal.2d 409, 414.)  Here, by contrast, the Tumlinsons and Johnston represented as *fact* that they had settled with SDG&E.

Second, the validity of the release was verifiable in *Guido*, particularly by an attorney who used releases in her law practice.  (*Guido, supra,* 1 Cal.App.4th at p. 843.) Here, by contrast, the Tumlinsons and Johnston represented that the settlement could not be corroborated because of its confidentiality clause.  "[W]hen a fact is peculiarly within the knowledge of the person making the representation and not within the knowledge of the person to whom it is made, the latter has the right to rely upon the representation of the former respecting such fact."  (*Bank of America National Trust & Savings Assn. v. Greenbach* (1950 98 Cal.App.2d 220, 234.)

## II.  *CONVERSION CLAIM AND AWARD OF PUNITIVE DAMAGES*

The Tumlisons assert that because the fraud claim was not supported by the evidence, the claims for conversion and punitive damages likewise fail.  Thus, because we have concluded there is substantial evidence of reasonable reliance to support the fraud claim, this contention is unavailing.

## III.  *DENIAL OF REQUEST TO FIRE ATTORNEY JOHNSTON AND FOR CONTINUANCE*

The Tumlinsons and Johnston assert the court erred in denying Mrs. Tumlinson's request to fire her attorney during trial and in not continuing the trial while she was in the hospital.  We reject these contentions.

A.  *Applicable Authority*

As the Court of Appeal stated in *County of San Bernardino v. Doria Mining & Engineering Corp.* (1977) 72 Cal.App.3d 776, 783-784 (*Doria*):  " 'Parties litigant have no absolute right to insist upon a change of counsel at the last moment before the time set for the commencement of the trial, where such change of counsel requires a continuance in order that the case may be properly prepared for trial.' "

"We cannot permit the courts to become a sanctuary for chronic procrastination and irresponsibility on the part of either litigants or their attorneys.  The trial judge must assert his power and 'vigorously insist upon cases being heard and determined with as great promptness as the exigencies of the case will permit.' "  (*Doria, supra,* 72 Cal.App.3d at pp. 780-781.)

We review the trial court's denial of a continuance under the abuse of discretion standard.  (*Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 716.)

B.  *Analysis*

Here, the court properly exercised its discretion in denying Mrs. Tumlinson's request for a continuance to retain new counsel as a delay tactic.  A party waiting until the date of a hearing to move for a continuance to obtain new counsel has the appearance of a "delaying tactic."  (*In re Marriage of Falcone v. Fyke* (2008) 164 Cal.App.4th 814, 823.)  This is particularly so given that the Tumlisons had earlier *opposed* Lifeline's motion to disqualify Johnston.  Further, the court acted within its discretion in denying the motion given that Lifeline's representative DeGeorge had flown from New Jersey to California, prepared for trial, and secured witnesses in reliance on the trial date.

11

The court also did not abuse its discretion when it refused to continue the trial when Mrs. Tumlinson purportedly fainted and then went to the hospital. A party's illness "does not *ipso facto* require" a continuance. (*Kalmus v. Kalmus* (1951) 103 Cal.App.2d 405, 414, overruled on other grounds in *Hudson v. Hudson* (1959) 52 Cal.2d 735, 738-742.) "[T]he court may take into consideration the legal sufficiency of the showing in support of the motion and the good faith of the moving party." (*Ibid.*) The court noted that Mrs. Tumlinson appeared to be a reluctant participant in her trial. As Lifeline pointed out, Mrs. Tumlinson also used purported health issues as a delay tactic in her SDG&E litigation, which led to her original attorney terminating his representation.

Further, the Tumlinsons' choice to absent themselves from the trial after the court denied their request for a continuance does not show the court abused its discretion. The Tumlinsons were represented by Johnston, who continued to represent them in their absence. A civil litigant represented by counsel has no constitutional right to be present at trial. (*Province v. Center for Women's Health & Family Birth* (1993) 20 Cal.App.4th 1673, 1686, overruled on other grounds in *Heller v. Norcal Mutual Ins. Co.* (1994) 8 Cal.4th 30, 41.)

Finally, the court agreed to admit Mrs. Tumlinson's deposition testimony as to matters in which she did not invoke the Fifth Amendment. The court also agreed to admit Mr. Tumlinson's deposition testimony if he voluntarily chose to be absent from the trial.

For all the foregoing reasons, we conclude the court did not abuse its discretion in denying the request for a continuance of trial.

DISPOSITION

The judgment is affirmed.  Costs on appeal to Lifeline.

NARES, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.

13