Filed 11/8/23  Khosla Ventures IV v. Neutron Holdings CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| KHOSLA VENTURES IV, L.P. et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> NEUTRON HOLDINGS, INC., et al., <br><br> Defendants and Respondents. | A165507 <br><br> (San Francisco City & County <br> Super. Ct. Nos. CGC-20-584188, CGC-22-598524) |

Plaintiffs Khosla Ventures IV, L.P., and Khosla Ventures IV (CF) L.P. (collectively KV) are venture capital funds that invested heavily in startup Boosted, Inc. (Boosted), a manufacturer of electric skateboards.  Defendant Neutron Holdings, Inc. doing business as Lime (Lime), is a company that offers shared electric scooters and other vehicles.

By 2019, [REDACTED].  This kind of deal is known in the industry as an "acqui-hire."  Shortly after commencing discussions with Lime, KV began pursuing a different deal with [REDACTED], whereby [REDACTED] would provide an infusion of capital and become Boosted's majority shareholder.  Neither deal came to fruition, although Lime, with KV's and Boosted's assistance, hired 11 Boosted employees.  Without additional capital, Boosted

1

was unable to stave off foreclosure by one of its lenders and its assets were sold at an auction at which Lime was a bidder.

In the wake of Boosted's failure, KV brought two actions that were consolidated in the superior court. The first was against Lime and certain of its officers[1] alleging fraud and other business torts.[2] The second was directed at the foreclosure alleging breach of contract and seeking specific performance and declaratory relief against Boosted's creditors, Lime, and another purchaser of some of Boosted's assets.[3] The court granted defense motions for summary judgment. We affirm.

## BACKGROUND[4]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

---

[1] These officers were David Richter (Lime's chief business officer (CBO)), Brad Bao (its chief executive officer (CEO)), and Michael Hillman (its vice-president of hardware (VP of Hardware)).

[2] KV brought "certain of these tort claims on behalf of non-party [Boosted], as the purchaser and assignee of any and all commercial tort claims held by Boosted against Lime."

[3] Defendants Structural Capital Investments II, LP (Structural), Ocean II PLO LLC (Ocean), and Shojin Enterprises, LLC (Shojin) eventually settled with KV and are no longer parties to the second action and this appeal.

[4] The trial court also granted motions to seal portions of the record. The parties have therefore filed redacted briefs and also unredacted briefs under seal.

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

Exercising its right to foreclose on Boosted's assets, Structural issued notification of a foreclosure sale scheduled for March 17th. Ocean and Lime, in turn, entered into an indemnity agreement, by which Ocean agreed to indemnify Lime for any losses "sustained by them arising out of any Action brought by KV alleging that Lime breached the [Mutual Nondisclosure Agreement between Lime and Boosted] or committed any tort against

[Boosted] in connection therewith, by hiring certain of [Boosted's] employees or by failing to purchase any of [Boosted's] assets."

The day before the scheduled sale, San Mateo County issued a Covid shelter-in-place order. The order had an exception for travel related to basic operations of financial institutions. [REDACTED]

## DISCUSSION

### Standard of Review

We review de novo the superior court's grant of summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*); *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).) In general, summary judgment "shall be granted if . . . there is no triable issue as to any material fact. . . . In determining if the papers show that there is no triable issue as to any material fact, the court shall consider all of the evidence set forth in the papers . . . and all inferences reasonably deducible from the evidence . . . [unless] contradicted by other inferences or evidence that raise a triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c).)

The moving party bears the burden of showing, to a degree equal to the standard of proof at trial, that there is no issue of material fact on any cause of action; if the moving party succeeds, then the opposing party bears the burden of presenting competent evidence raising an issue of material fact. (*Aguilar*, *supra*, 25 Cal.4th at p. 845; see Code Civ. Proc., § 437c, subd. (p)(2).) We therefore "determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law." (*Guz, supra,* 24 Cal.4th at p. 334.) We " 'liberally construe plaintiffs' evidentiary

4

submissions and strictly scrutinize defendants' own evidence, in order to resolve any evidentiary doubts or ambiguities in plaintiffs' favor.' " (*Lopez v. American Medical Response West* (2023) 89 Cal.App.5th 336, 342.)

**Fraud and Misrepresentation Causes of Action**

"The essential elements of fraud that give rise to a cause of action for deceit or intentional misrepresentation are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) actual and justifiable reliance; and (e) resulting damage. (See *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 974 . . . [elements of intentional misrepresentation]; *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 . . . ; see [Civ. Code,] §§ 1709, 1710.)" (*Berry v. Frazier* (2023) 90 Cal.App.5th 1258, 1268–1269.)

"A promise of future conduct is actionable as fraud only if made without a present intent to perform. (Civ. Code, § 1710, subd. (4); *Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 158–159. . . .) ' "A declaration of intention, although in the nature of a promise, made in good faith, without intention to deceive, and in the honest expectation that it will be fulfilled, even though it is not carried out, does not constitute a fraud. [Citation.]" ' (*Edmunds v. Valley Circle Estates* (1993) 16 Cal.App.4th 1290, 1301 . . . , quoting *Church of Merciful Saviour v. Volunteers of America* (1960) 184 Cal.App.2d 851, 859. . . .)" (*Magpali v. Farmers Group, Inc.* (1996) 48 Cal.App.4th 471, 481 (*Magpali*).)

Thus, " ' "something more than nonperformance is required to prove the defendant's intent not to perform his promise." [Citations.] . . . [I]f plaintiff adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury.' (*Tenzer v.*

5

*Superscope, Inc.* (1985) 39 Cal.3d 18, 30–31. . . .)" (*Magpali, supra,* 48 Cal.App.4th at p. 481.) "[A]s in *Tenzer*, we stress that the intent element of promissory fraud entails more than proof of an unkept promise or mere failure of performance. We note also that promissory fraud, like all forms of fraud, requires a showing of justifiable reliance on the defendant's misrepresentation." (*Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1183.)

KV maintains there is [REDACTED].

***Lime's Interest in The Deal***

KV's promissory fraud theory with respect to Lime's intent to consummate the deal is that Lime, mid-way through negotiations, decided to simply raid Boosted's employee roster instead of proceeding with the proposed deal to pay Boosted $30 million in stock for some intellectual property and 10 Boosted employees. In other words, KV claims it was essentially betrayed after assisting Lime in acquiring Boosted talent.

We begin with several observations. One, even before Lime prepared and forwarded the first nonbinding proposed term sheet, Boosted was in serious financial difficulty and [REDACTED]. Two, KV has never claimed that Lime's hiring of either Hillman or any other Boosted employees was wrongful. To the contrary, in responding to defendant's assertion "that '[i]f [KV] is now attempting to argue that Lime's hiring of Boosted employees constituted independently wrongful conduct" it has forfeited such a claim, KV stated in its closing brief that it "has not made—and does not make—that claim." Three, the proposed [REDACTED]. (See Civ. Code, 1710, subd. (4); see also *SCC Acquisitions, Inc. v. Central Pacific Bank* (2012) 207 Cal.App.4th 859, 865 [The "face of the term sheet indicated in the most clear language, it was not a promise to extend the loan. The term sheet itself

6

could not be deemed a misrepresentation that the loan would be extended."].) To the contrary, [REDACTED].

The "key" circumstantial evidence that KV claims creates a triable issue that "Defendants planned to abandon the $30 million deal and simply hire away the Boosted employees they wanted," is a [REDACTED].

[REDACTED]

[REDACTED]

[REDACTED]

KV maintains [REDACTED] and [REDACTED] e-mails are "compelling circumstantial evidence" that [REDACTED].

[REDACTED]

[REDACTED]

It is true that a party opposing summary judgment "may rely upon inferences, but 'those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork. [Citation.]' (*Joseph E. Di Loreto, Inc. v. O'Neill* (1991) 1 Cal.App.4th 149, 161. . . .)" (*Joshi v. Fitness International, LLC* (2022) 80 Cal.App.5th 814, 823.) The inferences KV urges here, however, are not reasonably deducible from the evidence.

### *Lime's Valuation*

[REDACTED]

[REDACTED].

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]<sup>5</sup>

"Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction. (*Spinks v. Clark* (1905) 147 Cal. 439, 444; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 711, p. 810.) 'Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact' (*Blankenheim v. E.F. Hutton & Co.* (1990) 217 Cal.App.3d 1463, 1475 . . . ; *Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498,

---

<sup>5</sup> KV asserts we should not consider [REDACTED]. KV claims the general rule that an appellate court "review[s] results and not reasoning" (*Travis v. Brand* (2023) 91 Cal.App.5th 996, 1006) does not apply in the summary judgment context, citing *Y.K.A. Industries, Inc. v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339. In that case, the appellate court stated, "because we view this record as insufficient on which to resolve that issue and others, we decline to accept the Agency and Grayson's invitation to exercise our discretion under [Code of Civil Procedure] section 437c, subdivision (m)(2) to address any other bases on which summary judgment was sought, or might have been sought, but not granted as alternate grounds for affirmance of the judgment." (*Id.* at p. 363, fn. 27.) As the court's comment makes clear, it declined to reach the tendered issue due to the inadequacy of the record before it, not because the usual rule that we review a trial court's judgment, not its reasoning, does not apply in the summary judgment context. To the contrary, where the record *is* adequate it is well established that "when a trial court relies upon erroneous reasoning, its ruling granting a motion for summary adjudication will be affirmed if it is nonetheless correct on any grounds that appear in the record and the opposing party had an adequate opportunity to address it." (*Angelica Textile Services, Inc. v. Park* (2013) 220 Cal.App.4th 495, 508–509 (*Angelica Textile*).) Here, defendants raised the issue of justifiable reliance in their moving papers, and KV addressed the issue in its opposition. Thus, unlike in *Y.K.A.,* we do have a complete record on this issue.

8

503 . . . ['[w]hether reliance is justified is a question of fact for the determination of the trial court']; *Guido v. Koopman* (1991) 1 Cal.App.4th 837, 843 . . . ['the reasonableness of the reliance is ordinarily a question of fact'].) 'However, whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts.' (*Guido v. Koopman*, *supra*, 1 Cal.App.4th at p. 843.)" (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239.) "[U]nless the plaintiff merely seeks to rescind the contract, it must suffer actual monetary loss to recover on a fraud claim." (*Id*. at p. 1240.)

We need not decide whether KV's supposed reliance on the $2.4 billion valuation, knowing full well its source and purpose, and having every opportunity to conduct due diligence but failing to do so, was, in and of itself, "reasonable," as there is no triable issue that any such reliance was detrimental and caused actual monetary loss.

KV maintains it suffered actual economic detriment [REDACTED].

KV's first claim—that it would have insisted on Boosted receiving more shares—fails to establish actual economic loss because the proposed deal was never consummated. In other words, Boosted did not receive "fewer" shares than it otherwise supposedly should have. As Lime aptly states, [REDACTED].

[REDACTED]. This is simply an attempt to bootstrap an unpleaded breach of contract claim into the cause of action for fraudulent misrepresentation. KV alleged no breach of contract claim, oral or written. Indeed, [REDACTED].

KV's second claim—that it [REDACTED].

In sum, summary judgment was properly granted on KV's fraud causes of action for multiple reasons.

9

### *Contractual Interference Cause of Action*

"Tortious interference with contractual relations requires '(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.' " (*Ixchel Pharma, LLC v. Biogen, Inc*. (2020) 9 Cal.5th 1130, 1141 (*Ixchel Pharma)*, citing *Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1148 (*Reeves*).) "To establish the claim, the plaintiff need not prove that a defendant acted with the primary purpose of disrupting the contract, but must show the defendant's knowledge that the interference was certain or substantially certain to occur as a result of his or her action." (*Reeves*, at p. 1148.)

KV's [REDACTED].

To begin with, there is no evidence raising a triable issue that [REDACTED].

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

In short, no evidence raises a triable issue that Lime, by recruiting Boosted employees, interfered in the contractual relations between Boosted and Structural.

### *The Intentional Interference with Prospective Economic Advantage Cause of Action*

Tortious interference with prospective economic advantage, unlike intentional interference with contractual relations, "does not depend on the

10

existence of a legally binding contract. A plaintiff asserting this tort must show that the defendant knowingly interfered with an ' " 'economic relationship between the plaintiff and some third party, [which carries] the probability of future economic benefit to the plaintiff.' " ' (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153. . . .)" (*Ixchel Pharma, supra,* 9 Cal.5th at p. 1141.)

In its complaint, KV alleged that Lime "engaged in wrongful, intentional acts designed to disrupt [KV] and Boosted from consummating an alternative transaction." These assertedly wrongful acts were "(1) misappropriating Boosted's trade secrets, (2) using Boosted's confidential information for improper purposes, (3) misrepresenting that Lime was genuinely considering acquiring the assets and employees of Boosted and concealing that Lime's true intention . . . to continue to entice Boosted to disclose its confidential information under the guise of due diligence for a transaction that was never going to happen, (4) misrepresenting that Lime was genuinely considering a business relationship with Boosted and concealing Lime's true intention in order to prevent Boosted from being acquired or financed by another party, and (5) inducing Plaintiffs to make bridge loans to Boosted to keep it operational during the purported 'due diligence' period and provide Defendants with more time to review and access Boosted's confidential information."

The trial court granted summary judgment on this cause of action on two grounds: it was preempted by the California Uniform Trade Secret Act

(CUTSA) (Civ. Code, § 3426 et seq.),[6] and the court had granted summary judgment on KV's fraud and intentional misrepresentation causes of action.[7]

"CUTSA provides the exclusive civil remedy for conduct falling within its terms, so as to supersede other civil remedies 'based upon misappropriation of a trade secret.' ([Civ. Code,] § 3426.7, subds. (a), (b).)" (*Silvaco Data Systems v. Intel Corp.* (2010) 184 Cal.App.4th 210, 236 (*Silvaco*), disapproved on other grounds in *Kwikset Corp. v. Sup. Ct.* (2011) 51 Cal.4th 310, 337.) Accordingly, KV does not dispute that the CUTSA preempts the bulk of its claims alleged in this cause of action. Rather, it claims at this point that it "identified at least one viable theory regarding intentional wrongful acts that were not based upon the misrepresentation of a trade secret"—that Lime " 'induced [it] to make bridge loans to [Boosted] . . . provid[ing] [Lime] with more time to review and access Boosted's confidential information," an intentional act designed to disrupt KV and [REDACTED] from consummating an alternative transaction.

KV relies on *Angelica Textile, supra,* 220 Cal.App.4th 495, which explains CUTSA "does not displace noncontract claims that, although related to a trade secret misappropriation, are independent and based on facts distinct from the facts that support the misappropriation claim." (*Id.* at p. 506.) " '[T]he determination of whether a claim is based on trade secret misappropriation is largely factual.' (*Angelica Textile*, 220 Cal.App.4th at

---

[6] "The terms 'displacement,' 'preemption,' and 'supersession' have all been used to describe CUTSA's effect." (*Erhart v. BofI Holding, Inc.* (S.D. Cal. 2020) 612 F.Supp.3d 1062, 1117, fn. 24.)

[7] Specifically, the trial court ruled KV's first four claims were preempted by CUTSA and, as to KV's fifth claim, ruled it had already granted summary judgment on KV's fraud claims.

p. 505.)  CUTSA preempts/supersedes civil, non-contract claims 'based on the same nucleus of facts as trade secret misappropriation.' " (*Deerpoint Group, Inc. v. Agrigenix, LLC* (E.D.Cal. 2018) 345 F.Supp.3d 1207, 1236.)

"Following the nucleus of facts test, numerous courts have held that CUTSA supersedes other state-law claims where the wrongdoing alleged is the misappropriation of trade secret information.  *See, e.g., SunPower Corp. v. SolarCity Corp.,* No. 12-cv-00694-LHK, . . . 2012 WL 6160472, at *13 (N.D.Cal. Dec. 11, 2012) (dismissing CLUC claims as preempted by CUTSA where 'while stated in various ways, each [claim] alleges in essence that Defendants [misappropriated] . . . proprietary information'); *K.C. Multimedia, Inc.* [*v. Bank of America Technology & Operations, Inc.* (2009) 171 Cal.App.4th 939, 960–963] (holding breach of confidence, interference with contract, and CLUC claims were superseded because 'the conduct at the heart of' the common law and CUTSA claim was 'the asserted disclosure of trade secrets').  In other words, common law tort claims are displaced by CUTSA where they 'do not genuinely allege "alternative legal theories" but are a transparent attempt to evade the strictures of CUTSA by restating a trade secrets claim as something else.' *Silvaco*[, *supra,* 184 Cal.App.4th at p. 239].  But a common law tort claim is not displaced by the CUTSA where the alleged wrongdoing 'is not based on the existence of a trade secret.' *Angelica Textile*[, *supra,*] 220 Cal.App.4th [at p. 508]." (*Zomm, LLC v. Apple Inc.* (N.D.Cal. 2019) 391 F.Supp.3d 946, 954.)

It is readily apparent that under this authority, KV's remaining claim is also foreclosed by CUTSA as it is based on [REDACTED].

[REDACTED]

[REDACTED].

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

In sum, summary judgment was properly granted on KV's interference with prospective economic advantage cause of action on multiple grounds.

***The Declaratory Relief Cause of Action***

In the foreclosure case, KV alleged that the March 2020 sale was invalid and sought a declaration that it retained lien rights in the Boosted assets Lime acquired at the sale. KV alleged specifically that the sale was conducted pursuant to void " 'Public Sale Notices' " "because the San Mateo County shelter-in-place order prevented potential bidders from appearing at the auction site designated in the notices." It also alleged Structural and Ocean breached the intercreditor agreement by failing to continue or renotice the foreclosure sale after the shelter-in-place order was issued. Thus, it asserts "because Lime participated in the foreclosure sale 'with knowledge that that sale was being conducted pursuant to void Public Sale Notices . . . Lime was not a 'good faith transferee.' "

The trial court granted summary judgment on this cause of action as to Lime "for the reasons set forth in the companion ruling on . . . Structural's [and] Ocean['s] motion for summary judgment." Those were: declaratory relief is not available under Commercial Code section 9625; KV failed to " 'set forth plainly and concisely any other material facts the opposing party contends are disputed' as required by Code of Civil Procedure section 437c(b)(3);" and KV failed to demonstrate the public sale notices were in violation of either the shelter-in-place order or the intercreditor agreement.

14

On appeal, KV focuses solely on the court's first ruling—that declaratory relief is unavailable under Commercial Code section 9625. It does not address the other two grounds on which the court granted summary judgment. As a result, KV has forfeited any claim that the trial court erred in granting summary judgment on either of these two grounds, and we can affirm the summary judgment on its declaratory relief cause of action for this reason, alone. "When a trial court states multiple grounds for its ruling and appellant addresses only some of them, we need not address appellant's arguments because 'one good reason is sufficient to sustain the order from which the appeal was taken.' " (*People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1237, quoting *Sutter Health Uninsured Pricing Cases* (2009) 171 Cal.App.4th 495, 513; see *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125 ["Plaintiff on appeal makes no argument whatsoever on the issue of causation. One of the grounds upon which defendant sought summary judgment was that there was no evidence it caused the injuries. The trial court determined defendant's conduct was not a legal cause of plaintiff's injuries. . . . Defendant argues plaintiff has forfeited any challenge to summary judgment based on lack of causation. We agree with defendant."].)

Accordingly, we need not consider the merits of any of the three grounds on which the trial court ruled. Nevertheless, it is readily apparent the court did not err in granting summary judgment on the second and third grounds it identified. As the court pointed out, KV filed an opposition to the defendants' summary judgment motion in the foreclosure action that attached declarations but contained no response to Lime's separate statement of material facts. "Glaringly, [KV] fail[ed] to 'set forth plainly and concisely any other material facts the opposing party contends are disputed,'

15

as required by Code of Civil Procedure section 437c(b)(3). . . . [KV] also fail[ed] to introduce any of their own evidence to support [six of Lime's undisputed material facts] thus violating the requirement in [Code of Civil Procedure] section 437c(b)(3) that '[e]ach material fact contended by the opposing party to be disputed shall be followed by a reference to the supporting evidence.' The Court has discretion to disregard any evidence not contained in [KV's] separate statement of material facts." (Fn. omitted.) The court thus went on to conclude KV had failed to raise a triable issue as to whether the lenders were a "financial institution" exempt from the shelter-in-place requirements, or whether the public sale notices were in violation of the intercreditor agreement. The court did not err in doing so.

## DISPOSITION

The judgment is AFFIRMED. Costs on appeal to respondents.

_____
Banke, J.

We concur:


_____
Humes, P.J.


_____
Bowen, J.*


\*\*Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


A165507, *Khosla Ventures v. Neutron Holdings*

17